J-A08012-17

2017 PA Super 169

| KATHY M. CARNEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONALD R. CARNEY | : | |
| | : | |
| Appellant | : | No. 2474 EDA 2016 |

Appeal from the Decree July 1, 2016
In the Court of Common Pleas of Monroe County
Domestic Relations at No(s):  No. 793DR10 7123CV10

BEFORE:   PANELLA, J., LAZARUS, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED MAY 31, 2017**

This is the second appeal to this Court in the divorce proceedings of Appellant Donald R. Carney ("Husband") and Appellee Kathy M. Carney ("Wife").  After remand, Husband again appeals the trial court's order of equitable distribution, arguing *inter alia*, that the trial court abused its discretion in valuing the business Husband established during the parties' marriage and in modifying Wife's alimony *pendente lite* ("APL") award.  We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

The parties married on April 3, 1986; after twenty-three years of marriage, the parties separated on February 5, 2010.  No children were born of the marriage.  During the marriage, Husband founded Brothers Auto

_____

[*] Former Justice specially assigned to the Superior Court.

Transport ("Brothers"), a company that picks up new and used vehicles and transports them throughout the country. As of the date of the parties' separation, Brothers was a thriving business with average gross sales of approximately $9 million each year and a fleet of forty trucks.

At one point, Wife worked at Brothers, assisting with administrative tasks. Wife's highest level of education was finishing eleventh grade. Wife no longer works due to health problems, including rheumatoid arthritis, lupus, and Raynaud's Syndrome, which affects her hands. Wife is responsible for the care of her elderly mother and her intellectually disabled brother. Following the parties' separation, Husband was required to pay Wife $4,942.00 each month in APL and also pay for her health insurance.

In the equitable distribution proceedings of the divorce litigation, the key disputed issue was the valuation of the trucking business. Each party retained two separate experts: 1) an asset valuation expert to value Brothers' trucks, trailers, and other tangible property, and 2) a business valuation expert to calculate the overall value of the business itself. We note the parties also offered revised valuations of Brothers' assets and its overall value.[1] Husband's experts employed an income-based approach and valued Brothers at $1,000,000.00. Wife's experts employed an asset-based

---

[1] We note that Wife's original asset valuation expert died suddenly before the master's hearing. After Wife retained a second asset valuation expert to testify, she revised her valuation of Brothers to incorporate the new expert's valuation of Brothers' truck fleet.

approach and valued Brothers at $1,978,328.00. On June 20, 2012, the Divorce Master issued a report and recommendation, finding Wife's valuation experts to be credible and Wife's proposed valuation for Brothers to be most reliable. However, the Master never explicitly stated in his report the specific value he adopted for Brothers.

Husband filed exceptions to the Master's determination regarding the valuation of Brothers. The trial court adopted the Master's recommendation to use Wife's proposed value for Brothers, but did not explicitly value the business in its discussion of this specific issue. However, in its decision, the trial court later indicates that it valued Brothers at $3,336,134. On February 15, 2013, the trial court entered a final divorce decree that incorporated the property division.

On appeal, this Court found the trial court's valuation of Brothers was "wholly unsupported by the record" as that specific figure was never offered by Wife's expert as a proposed value for Brothers, but instead was a proposed valuation of the truck fleet that did not account for the company's liabilities and obligations. *Carney v. Carney*, 843 EDA 2013, at *6 (Pa.Super. November 19, 2013) (unpublished memorandum). Moreover, Wife had withdrawn that figure from consideration after retaining her asset valuation expert and submitting revised valuations. As a result, this Court found that the trial court had abused its discretion in valuing Brothers, which in turn, affected the overall equitable distribution award. Thus, this Court remanded the case, directing the trial court to revisit the issue of Brothers'

- 3 -

valuation and reconsider the entire equitable distribution award in light of this new value.

After remand, the parties stipulated that the trial court could evaluate all equitable distribution issues based upon testimony and evidence presented at the previous evidentiary hearings. In addition, Wife filed a petition to modify her APL award. On January 25, 2016, the trial court held a hearing to allow the parties to introduce additional evidence to supplement the record.

On July 1, 2016, the trial court entered an order and opinion setting forth its equitable distribution award that divided the marital estate in a 50/50 ratio. The trial court found Wife's valuation experts most credible and adopted their valuation of Brothers at $1,978,328.00. To avoid the liquidation of Brothers, the trial court distributed the auto carrier business solely to Husband. To equalize this distribution, the trial court awarded the marital residence (valued at $100,400.00)[2] and the marital 401(k) account (valued at $331,620.00) to Wife and ordered Husband to pay Wife $6,761.95 each month, interest free, for ten years. The trial court also divided less valuable assets among the parties. Moreover, the trial court

---

[2] While the marital residence has a fair market value of approximately $244,400.00, it is encumbered by a lien of approximately $150,000.00, which was utilized by the parties in 2006 to add improvements to the property, including a garage, a putting green, a pool, a pool house, a gazebo, two waterfalls, and landscaping.

granted Wife's petition to modify APL and increased her award to $12,000 each month. Husband filed a timely appeal and a concise statement of errors complained of on appeal.

Husband raises the following issues for our review:

1. Did the lower court commit an error of law and/or abuse its discretion by accepting Wife's expert's "calculated value" of the marital business which relied upon an adjusted asset approach rather than a fair market value which considers the ongoing concern of the marital business?

2. Did the trial court commit an error of law and/or abuse its discretion in failing to tax effect the value of the marital business?

3. Did the trial court commit an error of law and/or abuse its discretion by entering an equitable distribution award calculated upon an improper value of the marital business?

4. Did the trial court commit an error of law and/or abuse its discretion by awarding alimony pendente lite to Wife based upon Husband's post-separation income without considering Wife's needs?

Husband's Brief, at 4.

Our standard of review in reviewing a trial court's equitable distribution order is as follows:

[a] trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an "abuse of discretion" unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of

partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

*Morgante v. Morgante*, 119 A.3d 382, 386–87 (Pa.Super. 2015) (quoting

*Childress v. Bogosian*, 12 A.3d 448, 455–56 (Pa.Super. 2011)) (internal

citations and quotation marks omitted).

First, Husband challenges the trial court's decision to adopt Wife's

experts' methods for the valuation of Brothers. Specifically, Husband argues

that his experts provided a more accurate valuation of Brothers using an

income-based method, which he characterizes as a generally accepted

standard of business valuation. Husband criticizes Wife's experts for using

an asset-based methodology, which Husband characterizes as a subjective

methodology that did not assess the fair market value of the business.

We begin by emphasizing that "[t]he Divorce Code does not set forth a

specific method for valuing assets, and consistent with our standard of

review, the trial court is afforded great discretion in fashioning an equitable

distribution order which achieves economic justice." *Mundy v. Mundy*, 151

A.3d 230, 236 (Pa.Super. 2016) (citation omitted). In valuing marital assets, "[t]he trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties." **Smith v. Smith**, 904 A.2d 15, 21–22 (Pa.Super. 2006). However, this Court has consistently held that, "[i]n determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property." **Mundy**, 151 A.3d at 236 (quoting **Smith**, 904 A.2d at 22).

While Husband argues that the trial court should have viewed his experts' testimony utilizing an income based valuation as the preferred valuation, we decline to adopt this protocol as the exclusive method for determining business valuation. Our precedent requires that the trial court be given great discretion to evaluate the parties' valuation methods and determine which is most reliable. Similarly, although Husband criticizes the testimony of Wife's expert witnesses who utilized a different asset-based valuation method, Husband is asking this Court to substitute his viewpoint for the credibility findings of the divorce master and the trial court. We reiterate that we defer to the factfinders' discretion in weighing the evidence and assessing the credibility of the witnesses.

Moreover, we reject Husband's suggestion that Wife's experts' valuation method was inadequate to accurately calculate the value of the parties' trucking business. Wife's business valuation expert, David E. Coffman, CPA, ABV, CFF, CVA, who is a certified public accountant as well as

certified business evaluator by the American Institute of CPAs, testified as to his extensive experience, having valued approximately 500 businesses, including five or six trucking companies. Coffman discussed various methods of valuation and explained that he felt an asset-based valuation method would most accurately calculate Brothers' valuation as the trucking company's fleet of auto carrier trucks was particularly valuable and would hold its value. When asked why he did not use an income-based approach as employed by Husband's experts, Coffman rejected that approach as he explained that it tends to overvalue companies by not accounting for whether that business is actually operating efficiently.

While Husband asserts that Wife's experts failed to account for the business's fair market value, this argument is belied by the record. Coffman provided a thorough explanation of how he analyzed comparable market sales by utilizing a database for the specialized freight trucking industry which reported on actual sales of auto carrier truck fleet businesses. In addition, Coffman performed his own valuation of the truck fleet by consulting objective market data for each of the individual trucks in the fleet. After accounting for depreciation of the operating equipment over time, Coffman calculated the fleet value to be approximately $3.376 million.

Coffman's valuation of the truck fleet was consistent with the valuation of Wife's asset-valuation expert, Barry Rudiger, owner of East Coast Truck & Trailer, a company with annual sales of auto transport trucks of $35 million and a truck inventory worth $7 million. The divorce master was "extremely

impressed" by Rudiger's expertise and his "methodical" valuation method in using objective data from NADA guide resources to value each truck in Brothers' fleet with their specific Vehicle Identification Number (VIN). Master's Report, 6/20/12, at 7. Consistent with our precedent above, the trial court was free to give weight to the master's report, particularly with respect to witness credibility, as the master had the opportunity to observe and assess the behavior and demeanor of the parties. **_Morgante, supra._** As the trial court's findings are supported by the evidence, we cannot find that the trial court abused its discretion in adopting Wife's valuation method for the Brothers auto transport business.

Second, Husband argues that the trial court erred in refusing to consider the tax effect of awarding the parties' auto transport business solely to Husband. The trial court summarily dismissed this argument, explaining that it was not required to apply a tax effect value to any of the marital assets as there was no evidence that the parties intended to sell any of the assets. Trial Court Opinion, 7/1/16, at 11, n. 3. As a result, the trial court assigned the entire trucking business to Husband and equalized this distribution by requiring Husband to compensate Wife through a monthly payment of $6,761.95 each month, interest free, for ten years. This calculation was based on Husband's receipt of the full equity value of Brothers without consideration of costs associated with a potential sale of the business.

The Divorce Code lists eleven relevant factors in an equitable distribution analysis, including the expenses associated with the sale of each marital asset. 23 Pa.C.S.A. § 3502(a). Section 3502(a) provides, in pertinent part:

**3502. Equitable division of marital property**

**(a) General rule.**—Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets. Factors which are relevant to the equitable division of marital property include the following:

* * *

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, **which ramifications need not be immediate and certain.**

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, **which expense need not be immediate and certain.**

23 Pa.C.S. § 3502(a)(10.1), (10.2) (emphases added).

In an analogous case, **Balicki v. Balicki**, 4 A.3d 654 (Pa.Super. 2010), this Court upheld the trial court's equitable distribution order which deducted sale expenses and tax ramifications from the valuation of a husband's insurance agency business before assigning the asset solely to the husband. Consistent with the statutory language in Section 3502, this Court rejected the argument that the sale expenses and tax ramifications

associated with the sale, transfer, or liquidation of a marital asset are only relevant in an equitable distribution determination if a sale of the asset is likely. Specifically, this Court provided that:

> [this argument] violates the clear directive from the legislature to consider the tax ramifications and expense of sale, which "need not be immediate and certain." ... It is crystal clear that the Legislature intended to stop the practice of the lower courts analyzing the prospect of sale of an asset [.] ... We believe the Legislature intends the assets simply be given the value they would have at distribution after deducting every expense necessary to achieve liquidation[.]...
>
> Wife also argues, correctly, that the statute requires us only to **consider** the tax ramifications and expense of sale along with numerous other listed factors, but the Divorce Code does not make a deduction for them mandatory. However, when we consider the tax ramifications and expense of sale associated with the marital interest in the insurance agency, we are convinced that deducting them is the fair and just method for valuing the insurance agency. Pursuant to our Equitable Distribution Award, Wife will receive $405,557 cash, without any tax consequences or other expense. This will be the largest asset that Wife will receive. The marital interest in the insurance agency is the largest asset Husband will receive, but it is a much different type of asset than cash. Husband cannot properly convert the marital interest in the insurance agency to cash without finding a potential purchaser, negotiating a written agreement containing the terms and conditions of the sale, consummating the sale and then paying income tax due as a result of the sale. Husband may incur expense of sale other than income tax, such as a broker's commission, finder's fee, attorney fees and accountant fees. Hence, Wife will have access at no cost to her largest asset, cash, while Husband's access to the cash value of his largest asset involves a potentially difficult and clearly costly process. Therefore, deducting the tax ramifications and expense of sale from the marital value of the insurance agency is certainly a fair way to divide this asset[.]

*Id.* at 663–64 (citations omitted). Moreover, the **Balicki** Court also pointed out that the husband might be forced to sell the insurance agency, given his court-ordered obligation to make a large cash payment to his wife within one year. **See id***.*

In the same manner, the equitable distribution order in this case provides Husband with the entire auto transport business, which cannot be converted to cash without significant expenses associated with the sale process. In comparison, Wife will receive monthly payments of cash without equivalent expenses. While the trial court avoided considering the tax implications and expense of Husband's need to sell Brothers in the future, this Court clearly held in **Balicki** that the expenses and tax ramifications associated with the sale of a marital asset is a relevant consideration whether a sale is likely or not. **See id.** at 663; **see also** 23 Pa.C.S. § 3502(a)(10.1), (10.2). Therefore, the trial court erred in failing to consider evidence related to the potential sale of the auto transport business before assigning the asset to Husband. Accordingly, we remand this matter to the trial court for a hearing limited to the issue of expenses associated with the potential sale of Brothers, and we direct the court to reevaluate the entire equitable distribution award (including the cash payment to Wife) in light of the evidence presented.

Lastly, Husband argues that the trial court erred in modifying Wife's APL award. Specifically, Husband claims that the trial court's award is much greater than Wife's actual needs and results in a "windfall" to Wife.

> We review APL awards under an abuse of discretion standard. **Haentjens v. Haentjens**, 860 A.2d 1056, 1062 (Pa.Super. 2004). APL is "an order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding." 23 Pa.C.S.A. § 3103. APL "is designed to help the dependent spouse maintain the standard of living enjoyed while living with the independent spouse." **Litmans v. Litmans**, 449 Pa.Super. 209, 673 A.2d 382, 389 (1996). Also, and perhaps more importantly, "APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare." **Id.** at 388. APL is thus not dependent on the status of the party as being a spouse or being remarried but is based, rather, on the state of the litigation. **DeMasi v. DeMasi**, 408 Pa.Super. 414, 597 A.2d 101, 104–105 (1991). Alimony, in contrast, is terminated upon remarriage or cohabitation. **Id.** at 104–105; **see also** 23 Pa.C.S.A. § 3706. Since, however, the purpose of APL is to provide the dependent spouse equal standing during the course of the divorce proceeding, it does not come with the "sanction" of Section 3706. **DeMasi**, at 104–105. "APL focuses on the ability of the individual who receives the APL during the course of the litigation to defend her/himself, and the only issue is whether the amount is reasonable for the purpose, which turns on the economic resources available to the spouse." **Haentjens**, at 1062; **see also DeMasi**, at 105.

**Childress**, 12 A.3d at 463 (quoting **Schenk v. Schenk**, 880 A.2d 633, 644–45 (Pa.Super. 2005)).[3]

Moreover, in reviewing a party's request for a modification of the APL award, courts must consider the following:

---

[3] This Court has emphasized that a dependent spouse may continue to receive APL through an appeal (including any remand) concerning matters of equitable distribution until a final order has been entered. **Schenk v. Schenk**, 880 A.2d 633, 647 (Pa.Super. 2005).

In ruling on a claim for alimony pendente lite, the court should consider the following factors: the ability of the other party to pay; the separate estate and income of the petitioning party; and the character, situation, and surroundings of the parties." An award of alimony pendente lite may be modified or vacated by a change in circumstances.... It is the burden of the party seeking to modify an order of support to show by competent evidence that a change of circumstances justifies a modification.

*Childress*, 12 A.3d at 463 (quoting *Busse v. Busse*, 921 A.2d 1248, 1255 (Pa.Super. 2015) (internal citations omitted)).

In light of this precedent, we find the trial court's modification of Wife's APL award was justified by competent evidence. Wife testified that her sole income is the APL award, which was previously set at $4,942.00 each month. However, Wife argues that this award is inadequate to meet her needs as her monthly expenses are approximately $5,800.00 each month. In comparison, Wife's expert, Mr. Coffman, reviewed Husband's financial information and calculated his 2014 annual net income to be $680,352.00 (monthly net income of $56,969.00). Although the trial court noted that the support guideline formula in Pa.R.C.P. 1910.16-4 suggested that Wife be awarded $22,227.00 in APL each month, it found this amount was excessive under the circumstances as Wife did not testify to any additional expenses or needs. Instead, the trial court modified Wife's APL award to $12,000.00 each month, which it deemed appropriate to allow Wife to live independently and to provide her with the resources to litigate this divorce action. As we find this award to be reasonable, we reject Husband's claim that the trial court abused its discretion in modifying Wife's APL award.

For the foregoing reasons, we affirm the trial court's decree in all respects except for its failure to account for the tax ramifications and expenses associated with the potential sale of Husband's auto transport business. Upon remand, we direct the trial court to hold a hearing, within sixty days, limited to the issue of expenses associated with the potential sale of Brothers, and to reevaluate the entire equitable distribution scheme, including the cash distribution to Wife.

Decree affirmed in part and reversed in part. Case remanded for proceedings in accordance with this decision. Jurisdiction relinquished.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/31/2017