J-A07002-21

2021 PA Super 133

| | | |
|---|---|---|
| CARL W. JAGNOW | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHARON A. JAGNOW | : | |
| | : | |
| Appellant | : | No. 1055 MDA 2020 |

Appeal from the Order Entered July 21, 2020
In the Court of Common Pleas of Lebanon County Civil Division at No(s):
2016-20038

BEFORE: BOWES, J., DUBOW, J., and STEVENS, P.J.E.*

OPINION BY BOWES, J.: **FILED JUNE 29, 2021**

Sharon A. Jagnow ("Wife") appeals from the order that provided for the equitable distribution of the marital property of Wife and Carl W. Jagnow ("Husband") and decreed the parties divorced. We affirm.

The trial court offered the following summary of the history of this case.

> [Husband] and [Wife] were married on October 22, 1983 and separated on January 15, 2016. No children were born of the marriage. Husband was born in January 1948 and is seventy-one years old. Wife was born in April 1954 and is sixty-five years old.
>
> Both parties have a degree in education and were employed as teachers prior to marriage. Husband retired from the Northern Lebanon School District in 2003 due to physical and mental health issues. Husband was fifty-five years old at the time of retirement earning approximately $55,000 annually. As a result of his retirement, Husband commenced benefits under his Public School Employment Retirement System (hereinafter PSERS) pension. The parties agreed that Husband would elect a single life annuity upon his retirement to provide him greater monthly benefit during

_____

* Former Justice specially assigned to the Superior Court.

his lifetime, understanding that Wife would not be entitled to any survivor benefits upon his death. Accordingly, Husband began receiving a monthly benefit of $2,901.81 upon his retirement in 2003. Also, in June of 2007, Husband began receiving $392 per month from his Trans America IRA. Additionally, he began receiving $1,693.50 from Social Security at age 62.

Wife continued to teach at the Northern Lebanon High School until 2013. Like Husband, she decided to retire at an earlier age due to developing health issues. Upon retirement, she began receiving a monthly benefit through her PSERS pension. The parties had again agreed that Wife would select a single life annuity upon retirement, knowing that Husband would not be eligible for any ongoing benefits should Wife predecease him. Wife's monthly gross benefit as a result of her PSERS pension was $3,738.68. Wife began receiving Social Security benefits in the amount of $1,572 in 2016 when she reached sixty-two years of age. In addition to the retirement benefits, the parties' assets include a marital residence, vehicles, various bank accounts and personal property items.

On January 15, 2016, Husband filed a Complaint in Divorce raising claims of divorce and equitable distribution. On January 18, 2019, Wife filed a motion for the appointment of a special master in divorce (hereafter Divorce Master). A Divorce Master was appointed on January 23, 2019.

A pre-trial conference was held on March 6, 2019. A hearing was held on April 17, 2019. The parties stipulated, prior to the hearing, that they would divide all marital property, with the exception of the parties' PSERS pensions, on a 50-50 basis.[1] Thereafter, the Divorce Master issued his report and recommendation on August 21, 2019. The recommendation provided that the PSERS pensions would also be split fifty-fifty.

_____

[1] Omitting the pensions, Husband would be awarded the marital assets totaling $229,382.91. Wife would be awarded the marital assets totaling $281,106.55. Because Wife's marital assets were in excess of Husband's in the amount of $51,723.64, Wife was required to pay Husband one-half of the difference.

Following the Divorce Master's recommendation, the parties asked Jonathan Cramer of Conrad Siegel Inc. to prepare a qualified domestic relations order[ ("QDRO")] to effectuate the Divorce Master's decision regarding the pensions. When Mr. Cramer prepared a QDRO, he indicated that Wife's share should be paid to Husband's estate should Husband die first. Wife objected to this language. The parties resubmitted the issue to the Divorce Master, who vacated his initial report and solicited additional arguments from both sides. Eventually, on February 26, 2020, the Divorce Master rendered a supplemental decision in which he adopted Mr. Cramer's paradigm that Husband's share of Wife's pension should be paid upon his death to his estate.

Trial Court Opinion, 7/21/20, at 2-4 (citations and unnecessary capitalization and repetition of values in numerical form omitted).

Wife filed exceptions, challenging the continuation of payments should Husband predecease her. The trial court disagreed and entered a final decree which, *inter alia*, provided that the QDRO include the following language: "If the Alternate Payee dies before the Member, the Alternate Payee's share of the Member's annuity payable to PSERS shall be paid to the Alternate Payee's estate for the Member's lifetime." Final Decree, 7/21/20, at 4.

Wife filed a timely notice of appeal, and both Wife and the trial court complied with Pa.R.A.P. 1925. Wife presents the following question for our resolution:

Did the trial court err as a matter of law and/or abuse its discretion in its July 21, 2020 order by requiring that the amount of $811.77 payable to Appellee/Husband from Appellant/Wife continue and be included on a [QDRO] requiring this amount to be paid to Appellee/Husband's estate if he should predecease Appellant/Wife?

Wife's brief at 7 (unnecessary capitalization omitted).

We consider Wife's issue mindful of the following standard of review:

Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Carney v. Carney*, 167 A.3d 127, 131 (Pa.Super. 2017) (cleaned up).

Equitable distribution "is an incident of divorce, not marriage." *Wilson v. Wilson*, 828 A.2d 376, 378 (Pa.Super. 2003). "[T]he settlement of economic and property claims is merely a part of the trial court's broader power to terminate the marriage." *Id*. The objective of equitable distribution is "effectuating economic justice between the parties and achieving a just determination of their property rights." *Carney*, *supra* at 131.

The rights of the spouses to the distribution of marital property vests upon entry of the divorce decree, which "constitutes a final determination of the rights between the parties." *Kadel v. McMonigle*, 624 A.2d 1059, 1063 (Pa.Super. 1993). Thereafter, both parties "have complete freedom of disposition" of their separate property. 23 Pa.C.S § 3504.

It is well-settled that "[e]ach spouse has a reasonable expectation of enjoying the monies received from an employee retirement fund. In order to effectuate economic justice between the parties, equity demands that both parties share in this asset acquired during the marriage." **Conner v. Conner**, 217 A.3d 301, 311 (Pa.Super. 2019) (cleaned up). Thus, pension funds accrued during marriage, including state employees' pension funds, constitute marital property that is subject to equitable distribution. **See**, **e.g.**, **Hess v. Hess**, 212 A.3d 520, 524-25 (Pa.Super. 2019) (reviewing equitable distribution of State Employee Retirement System pension). A court has two options in so doing:

> The first method, "immediate offset," awards a percentage of the marital portion of the value of the pension to the party earning it, and offsets the marital value of this pension with other marital assets at equitable distribution. This method is preferred where the estate has sufficient assets to offset the pension, because it does not require the court to retain jurisdiction indefinitely. The second method, "deferred distribution," generally requires the court to retain jurisdiction until the pension is collected, at which point the pension is divided according to the court's order. This method is more practical where the parties lack sufficient assets to offset the marital value of the pension.

**Conner**, **supra** at 312 (citations omitted). A QDRO effectuates the distribution in that it "creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a participant under [the] pension plan." **Getty v. Getty**, 221 A.3d 192, 195 n.4 (Pa.Super. 2019).

In the case *sub judice*, Wife does not dispute that her pension is a marital asset subject to equitable distribution or challenge the propriety of a

QDRO effectuating a 50-50 split of the pension upon its distribution. Wife contends only that the trial court should not have ordered that the payments continue to be made to Husband's estate in the event that he predeceases her. Citing a dearth of case law concerning "how deferred distribution should be handled when a party predecease[s] the other,"[1] Wife suggests that the fact that the parties chose higher-paying single life annuities, rather than opting to secure continued payments for the surviving spouse, manifested the parties' intent that "the surviving spouse would not be entitled to any additional benefits from the deceased spouse's pension." Wife's brief at 12-13.

> The trial court addressed Wife's argument with the following:

> If we were to permit Wife to retain her entire pension should Husband die, such a result could frustrate the general proposition that equitable distribution is vested at the time of divorce. In the opinion of this court, that could create an unfair result. We cannot ignore the fact that pension benefits are received in lieu of higher compensation, which would have otherwise enhanced the ability to acquire marital assets. *See Cornbleth v. Cornbleth*, 580 A.2d 369 (Pa.Super. 1990). Effectively, the parties deferred income they could have received until a later date. Had the parties not chosen to defer income via a pension, the assets that would have been acquired with the extra funds would have been divided at the time of divorce and both parties would have been at liberty to create a last will and testament that distributed those assets to people/entities of their own choosing. Adopting Wife's argument

_____

[1] Wife does cite non-precedential decisions filed by this Court in 2013 and 2017. However, pursuant to Superior Court I.O.P. 65.37(B), with certain exceptions not applicable here, such decisions issued prior to May 2, 2019, "shall not be relied upon or cited by a Court or a party in any other action or proceeding[.]" Hence, we neither identify nor consider those decisions.

would frustrate Husband's ability to leave the entirely of his estate to people/entities of his own choosing.

Trial Court Opinion, 7/21/20, at 10-11 (unnecessary capitalization omitted).[2]

Wife counters as follows:

Husband and Wife clearly contemplated during the course of the marriage that neither would receive an ongoing benefit from the other's pension upon their death. To reward Husband by allowing his estate to receive a benefit should he predecease Wife is contrary to the parties' intentions and would unjustly award Husband. As such, it was an abuse of discretion by the [t]rial [c]ourt to imply a retirement selection for survivor benefits had not already been made. Hence, Husband's estate should not continue to receive payment should he predecease Wife.

Wife's brief at 13-14.

Wife has failed to convince us that "the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will[.]" *Carney*, *supra* at 131 (internal quotation marks omitted). Wife's contract-based argument is pertinent not to equitable distribution, but to litigation of pre- or post-nuptial agreements governing the disposition of marital assets. *See*, *e.g.*,

_____

[2] The trial court further noted that Wife did not "raise the issue that a portion of her pension should revert to her" until after the initial proceeding before the master had concluded and the QDRO was prepared. Trial Court Opinion, 7/21/20, at 11. Had she stated her position earlier, "the Divorce Master could very well have determined that Wife should liquidate her IRA, her Guardian fund or a portion of her equity in the marital home in order to compensate Husband under an 'immediate offset' distribution." *Id*. (unnecessary capitalization omitted). Although, as Wife observes, both parties agreed to a deferred distribution, *see* Wife's brief at 13, Husband might have advocated differently had the issue surfaced earlier in the litigation.

*Stackhouse v. Zaretsky*, 900 A.2d 383, 386 (Pa.Super. 2006) (indicating that the intent of the parties governs interpretation and application of agreements as to the disposition of the parties' assets made in contemplation of divorce). Wife points to nothing in the certified record to establish that the parties' decisions during the course of the intact marriage to select single life annuities for their pension payments constituted a post-nuptial agreement entered in contemplation of divorce.

Wife is correct that, if the parties had remained married, Husband's estate would not have been entitled to any portion of her pension had he predeceased her. *See* Wife's brief at 11-13. However, had Husband and Wife remained married, their pension incomes would have continued to be used for enjoyment and the acquisition of marital assets so long as they both lived. Further, surviving spouses in an intact marriage are entitled to receive some, if not all, of the decedent spouse's estate. *See* 20 Pa.C.S. §§ 2102 (spousal share of intestate decedent's estate), 2201-11 (elective share). The parties' divorce changed everything. *See* 23 Pa.C.S. § 3504 ("[W]henever a decree of divorce or annulment is entered by a court of competent jurisdiction, both parties whose marriage is terminated or affected shall have complete freedom of disposition as to their separate real and personal property and may mortgage, sell, grant, convey or otherwise encumber or dispose of their separate property, whether the property was acquired before, during or after coverture[.]").

Wife has offered no authority to establish that Husband's share of her pension should be treated differently than any other marital property subject to equitable distribution upon divorce.  As such, we discern no error of law or abuse of discretion in the trial court's ruling that Husband is entitled to pass his interest in Wife's pension benefits on through inheritance or bequest just as he would be if he had received his interest through immediate offset rather than deferred distribution.  Accordingly, we affirm the trial court's July 21, 2020 order directing equitable distribution of the marital estate and decreeing the parties divorced.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/29/2021

- 9 -