J-A22013-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BRYAN S. MASSAR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHIRLEY M. MASSAR | : | No. 316 MDA 2021 |

Appeal from the Order Entered February 3, 2021
In the Court of Common Pleas of Lebanon County Civil Division at No(s):
2019-20087

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 27, 2022**

Bryan S. Massar ("Husband") appeals from the February 3, 2021 order that overruled his exceptions to the special master, granted the exception of Shirley M. Masser ("Wife"), and entered the divorce.  We affirm in part, vacate in part, and remand.

The trial court succinctly summarized the following facts and procedural history as follows:

> The parties in this divorce action were married on October 17, 1999.  Plaintiff Bryan S. Massar ("Husband") filed the Divorce Complaint on February 8, 2019 and the parties have agreed that February 8, 2019 should be considered the date of separation.
>
> . . . .
>
> This was the first marriage for both parties.  Wife is fifty-four (54) years old and Husband is fifty-two years of age.  Both are in good health and worked on a full-time basis throughout the marriage. The parties have resided together in the marital home throughout these proceedings.  The parties have two children who are both

adults. The parties' son is twenty-three years old, has graduated from college and lives in Philadelphia. He is employed and self-sufficient. The parties' daughter is nineteen years of age, is still in college in Lancaster, and resides with the parties when she is home from school. She works part-time at Cornwall Manor as a CNA.

Husband has worked as a truck driver for FedEx Freight, Inc. for eleven years. His income is determined by his mileage. In 2019, he had [a] gross income of $104,773.10. He is paid on a weekly basis. His employer provides medical, dental and vision coverage for Husband, Wife, and the two children. Husband pays $150.00 weekly toward this coverage because Wife would be able to obtain her own coverage through her own employment. Prior to separation, Husband's paychecks went into a joint account maintained by the parties at Jonestown Bank and Trust. Since separation, he has been depositing his checks into his own account at Fulton Bank.

Husband has a Vanguard 401K retirement plan and a FedEx pension plan through his employment. The account summary of his Vanguard 401K for the period January 1, 2019 through March 31, 2019 showed a beginning balance of [$]102,950.31 and an ending balance of $116,914.28 for that period. The FedEx pension plan was valued at $28,668.00 as of March 1, 2019 and $28,244 as of August 1, 2019.

The marital home has an appraised value of $174,500.00. The parties had a loan on the home at Jonestown Bank and Trust. Throughout the marriage, Husband paid the household expenses, including the monthly mortgage payments of $801.40, taxes, water, sewer, electric, gas, and home insurance. At the time of separation, the balance on the home loan was $11,303.99, which Husband has since paid off. Wife paid $700.00 toward the spring real estate taxes in 2020. She also made a one-time payment of $175.00 for oil for the home. Since the date of separation, Wife has been paying for the trash and cable services and each party purchases their own food. The parties indicated that they both desire that the marital home be sold.

During the marriage, the Husband co-signed a loan with Lebanon Federal Credit Union with the parties' son to fund his education at Bloomsburg and Temple Universities. This loan had a $58,143.79 balance at the time of the hearing. Husband

testified that he has never been required to make any payments on this loan as the son has never been in default. Husband also took out a Discover parent's loan in the amount of $13,000.00 for his son's education on which he is designated as the responsible party. This loan is in deferment and no payments had been made as of the time of the [special master] hearing. No collection efforts had been made by the lender. Husband was afraid that he would "get stuck" paying for the Discover loan. Wife also borrowed $5,000.00 from her mother to enable her son to graduate from Temple. She has been paying off that debt to her mother in the amount of $100.00 monthly.

Trial Court Opinion, 2/3/21, at 1-4. In addition, Wife introduced evidence to support her request for counsel fees and legal costs that she incurred during the divorce proceeding.

Following the evidentiary hearing and briefing by the parties, the special master recommended that Wife receive fifty-five percent of the marital estate and $600 monthly alimony for three years following the entry of the divorce decree. The special master also recommended that Wife receive $1,225 in counsel fees, costs, and expenses. In addition, the special master endorsed an equitable distribution scheme whereby the parties utilize the net proceeds from the sale of the marital home to satisfy marital debts, reimburse Husband $6,366 for mortgage and tax payments satisfied in 2019, and compensate Wife for the disparity in the value of the personal property retained by the parties. Thereafter, Wife would collect fifty-five percent of remaining proceeds and Husband would receive the balance.

In relation to Husband's retirement benefits, the special master recommended that the parties: (1) divide the FedEx pension and FedEx

- 3 -

sponsored 401(k) accounts on the same 55%-45% basis in favor of Wife; and since the estate was insufficient for an immediate offset, (2) cooperate in the preparation, and equally divide the cost, of qualified domestic relations orders ("QDRO") for the distribution of both assets. *See* Special Master's Report and Recommendation, 9/8/20, at 22-23. As to this deferred distribution, the special master noted that "The value of the account[s] for purposes of this distribution shall be determined as of the date of distribution." *Id*.

Husband and Wife both timely filed exceptions to the special master's report and recommendation. Husband opposed the award of alimony absence a showing of actual need, and challenged the award of counsel fees in light of Wife's failure to present evidence of her inability to pay. He also contested the division of Husband's retirement benefits, assailed the manner that the special master calculated the $6,366 credit for his post-separation payments toward marital obligations, and complained that, should their son default on a student loan that Husband co-signed for the son's benefit, Wife should also be liable for a portion of that debt. Wife's single exception challenged the special master's finding regarding the ownership of the 2015 Harley Davidson motorcycle that Husband transferred to his father postseparation.

Following the review of the parties' countervailing briefs, the trial court entered a final order that denied all of Husband's exceptions, granted Wife's exception relating to the ownership of the 2015 Harley Davidson, and adjusted the distribution of the marital assets to award Wife an additional $5,587.15,

and dissolved the marriage, *i.e.*, "[Husband] and [Wife] are divorced from the bonds of matrimony pursuant to section 3301(d) of the Divorce Code[.]". Order Of Court, 2/3/21 at 2. The order noted "All other aspects of the report of the Special Master are affirmed." ***Id***.

Husband filed a timely notice of appeal and a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court entered an order directing this Court to the reasoning outlined in its February 3, 2021, order and opinion. This appeal is ripe for disposition.

Husband presents the following questions for our review:

1. Whether the trial court erred and/or abused [its] discretion by upholding the award of alimony to Wife, as Wife failed to demonstrate actual need in this matter, particularly in light of the fact that the evidence presented confirms that Wife can pay her reasonable needs and monthly household expenses through her own income, which is further being supplemented by an award of 55% of the marital estate, as well as the fact that Wife will be living with her adult daughter, who is working and is able to contribute toward Wife's monthly household expenses?

2. Whether the trial court erred and/or abused [its] discretion by upholding the finding that Husband must pay a portion of Wife's counsel fees, costs and expenses related to the divorce matter, as Husband failed to demonstrate actual need in this matter or an inability to pay, and as the evidence presented confirmed that Wife has the income and assets necessary to pay her own counsel fees, costs and expenses related to the divorce matter?

3. Whether the trial court erred and/or abused [its] discretion by failing to correct the division of Husbands Fed-Ex pension and Fed-Ex 401K account, to direct that only the marital portion of these accounts are subject to division as part of the marital estate, as the evidence clearly demonstrates that the entire account is not marital in nature, including post-separation contributions to these accounts by Husband?

- 5 -

4. Whether the trial court erred and/or abused [its] discretion in calculating the credits to be awarded to Husband for payment of marital obligations, including the mortgage, home equity loan and real estate taxes associated with the marital residence?

5. Whether the trial court erred and/or abused [its] discretion by failing to set for[th] provisions for division of the Lebanon Federal Credit Union student loans, which are clearly marital obligations, and constitute marital debt which is subject to division as part of this divorce matter?

Husband's brief at 6-7 (leaned up).

As Husband's arguments concern the trial court's equitable distribution order, the following legal precepts inform our review.

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Schultz v. Schultz*, 184 A.3d 168, 174 (Pa.Super. 2018) (cleaned up) (quoting *Carney v. Carney*, 167 A.3d 127, 131 (Pa.Super. 2017)). Furthermore, "it is within the province of the trial court to weigh the evidence and decide credibility, and this Court will not reverse those determinations as

long as they are supported by the evidence." *Id*. (quoting *Sternlicht v. Sternlicht*, 822 A.2d 732, 742 (Pa.Super. 2003)).

Husband's first claim relates to the award of alimony. The crux of Husband's contention is that Wife failed to demonstrate that alimony was necessary, *i.e.*, that she is not capable of satisfying her reasonable needs, which Husband asserts is a threshold determination pursuant to 23 Pa.C.S. § 3701(a). Husband's brief at 19 ("Where a divorce decree has been entered, the Court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary."). Highlighting Wife's testimony that she can pay her present bills from her current employment, and noting that she will reside with their adult daughter after selling the marital home and retaining 55% of the net proceeds, Husband contends that the certified record does not support the trial court's finding that Wife "cannot afford to pay her bills." *Id*. at 23-25, 26. Husband also highlights that he paid the majority of the expenses during the two years that the parties continued to share the marital home following separation. *Id.* at 27. In sum, he opines, "simply because Husband makes more money than Wife should not be enough alone to result in an award of alimony to Wife." *Id*. at 26.

The Divorce Code provides that in determining the necessity, nature, amount, and duration of alimony, the court shall consider the following factors:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. . . .

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S. § 3701(b)(1)-(17). In addition, this Court as observed, "the factors in Section 3701(b) do not create an exhaustive list. In fact, the trial court should also consider the assets the petitioning spouse received in equitable distribution." *Schultz*, *supra* at 180 (citation omitted).

Instantly, the special master noted its consideration of the relevant statutory factors, and in adopting the ensuing recommendation to award Wife alimony in the amount of $600 per month, the trial court recounted those factors and reasoned as follows:

> Although Wife testified that she will be able to support herself on her earnings, we believe that she will need financial aid in light of her expenses and income limitations. The parties were married for over nineteen years and Wife was financially dependent on Husband for the duration of the marriage. We believe that the $600.00 monthly amount will provide her with the funds she will require to establish a new home, finish paying off the $280 monthly car loan, pay off her attorney's fees, and repay the $100.00 monthly loan payment to her mother. Wife explained that she had previously worked overtime hours for additional income, but that she had not been doing so recently as she would be required to work in the COVID ward. Hopefully, this will not be the situation in three years' time and Wife may be able to take on overtime to supplement her income. In addition, the parties' daughter will likely have graduated college and be working full-time within three years and she will be able to contribute funds to the household expenses if she continues to live with Wife. For these reasons, we will affirm the SM's award of alimony in the amount of $600.00 per month for a three-year period.

Trial Court Opinion, 2/3/21, at 12-13.

Thus, the trial court did not forego consideration of the statutory factors in favor of a simple determination that he has more marketable skills and a

superior earning capacity. The trial court clearly considered, *inter alia*, the parties' relative earning capacity, assets, liabilities, sources of income, ages, and education as well as the duration of the marriage, and prior standard of living. *Id*. at 10-13. Indeed, the core of Husband's assertion is not so much that the trial court neglected to consider the statutory factors as it is that Husband disagrees with the trial court's assessment of those considerations. Husband's brief at 28. In fact, Husband offers his own analysis of each of the seventeen factors to determine that none favor awarding alimony to Wife. *Id*. at 28-35. Contrary to these protestations, the award is reasonable under the circumstances of this case and supported by the record.

Moreover, the fact that the trial court did not explicitly present any calculations to demonstrate that Wife cannot satisfy her needs is of no moment. As noted in the trial court's recitation of fact, the trial court determined that Wife's gross earnings for 2019 were $39,434 and that she did not have any assets of value beyond her 55% share of the marital estate, which has yet to be liquidated. Trial Court Opinion, 2/3/21, at 5. Her monthly expenses include $280 for an automobile that is less valuable than the balance of the loan. *Id*. at 6. Following the divorce, Wife will be responsible for paying her health benefits, an expense of approximately $250 per month, and obtaining a new home. *Id*. at 5-6. Conversely, the trial court recognized that Husband's gross income for 2019 was $104,773.10. *Id*. at 2. He has a Vanguard 401(k) retirement plan valued at $102,950.31 near the time of

separation and a FedEx defined-contribution-type pension, whose marital value was approximately $28,000. *Id*. at 3.

More importantly, while Wife testified that she is currently capable of supporting herself, the certified record supports the trial court's findings that she will require post-divorce financial assistance in light of her limited income and assistance. During the evidentiary hearing, Wife testified that she earns $15.00 per hour as a certified nursing assistant, a position that she has held for eleven years. *See* N.T., 7/10/20, at 47-48. The rate of pay increased by fifty cents per hour when she worked evening or overnight shifts. *See* Exhibit 20.[1] She explained that her gross earnings for 2019 were $39,434.00.[2] *Id*. at 56; Exhibit 23. She has a 401(k) retirement account that is entirely non-marital. N.T., 7/10/20, at 49. The account is valued at $860. *Id*. In addition, Wife presented her current and anticipated monthly expenses, including healthcare, car payment, food, clothing, and utilities. *Id*. at 49-50, 53; Exhibit 19. Moreover, while Husband stresses that Wife will reside with their

---

[1] During 2020, the rate of pay for the evening shift increased to $16.00 per hour. N.T., 7/10/20, at Exhibit 18.

[2] Husband does not challenge the court's findings that Wife's actual net monthly income during 2019 was $1,237. Rather, he recalculates Wife's monthly income for 2020 based on a six-month period where Wife increased by 114 hours the time worked at an elevated pay rate of $15.50 or $16 per hour compared to the comparable six-month-period in 2019. Husband's brief at 12, 23. As Husband did not establish that Wife's 2020 earnings were more representative of her future income, we find no basis to disturb the trial court's reliance upon the 2019 earnings in addressing this factor, particularly in light of the scheduling uncertainty due to the Covid-19 pandemic.

nineteen-year-old daughter after moving from the marital home, he ignores the fact that the daughter is a college student who works only parttime. *Id*. at 72-73. Thus, the certified record bears out that any contribution that Wife could expect from her daughter would be negligible.

Accordingly, for all of the foregoing reasons, we reject Husband's contention that the trial court neglected to calculate whether Wife can satisfy her reasonable expenses and Husband's ability to pay in awarding the alimony. Husband's brief at 23, 25. Insofar as the alimony award effectuates economic justice between the parties, we do not disturb it.

Next, as to Husband's challenge to the award of counsel fees, the Divorce Code provides,

> In proper cases, upon petition, the court may allow a spouse reasonable alimony pendente lite, spousal support and reasonable counsel fees and expenses. Reasonable counsel fees and expenses may be allowed pendente lite, and the [trial] court shall also have authority to direct that adequate health and hospitalization insurance coverage be maintained for the dependent spouse pendente lite.

23 Pa.C.S. § 3702(a).

We review the award of counsel fees for an abuse of discretion. *Schultz*, *supra*. The relevant principles follow:

> We will reverse a determination of counsel fees and costs only for an abuse of discretion. The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be "on par" with one another. Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting

party's financial resources, the value of the services rendered, and the property received in equitable distribution.

*Id*. at 181 (quoting ***Teodorski v. Teodorski***, 857 A.2d 194, 201 (Pa.Super. 2004)).

In sustaining the special master's recommendation to award Wife $1,225 in counsel fees and costs, the court first noted the relevant law, including the fact that "counsel fees are to be awarded only upon a showing of need[,]" and then proffered the following rationale.

> Wife had incurred $2,227.00 in attorney's [fees] and expenses of litigation as of the dates of the hearings before the [special master] and the [special master] award her $1,255.00 toward this amount. Husband claims that Wife failed to show need for this award. Wife claims that the fees incurred were reasonable, and that Husband has the ability to pay Wife's counsel while she is unable to do so.
>
> After careful consideration, we will not disturb the award of the [special master].  In considering Wife's request, the [special master] gave due consideration to Husband's superior income and ability to pay, Wife's necessity, and the limited extent of Wife's separate assets. We believe that under the total circumstances of the parties' situations, and in consideration of the parties' relative incomes, along with Wife's financial obligations, and the limited assets and alimony awarded to her in this divorce litigation, this award was justified.  Thus, we will accept the determination of the [Special Master] and overrule Husband's Exception.

Trial Court Opinion, 2/3/21, at 14.

The root of Husband's challenge to the award of counsel fees is that the trial court neglected to consider Wife's ability to pay.  This contention is predicated on three assertions: (1) Wife never testified that she is unable to pay her counsel fees; (2) Wife had very few financial obligations while the

- 13 -

parties lived separate in the marital home; and (3) Wife received 10% more than Husband in the distribution of the marital estate. Husband's brief at 36. Hence, Husband asserts "the [t]rial [c]ourt ignore[d] the fundamental issue that Wife has not shown actual need, she did not even testify that she cannot pay her legal fees, costs and expenses, in order to substantiate such a payment by Husband." *Id*.

We disagree. As noted *supra*, the trial court considered Wife's financial resources, including the assets received in equitable distribution and Husband's "superior income and ability to pay." Trial Court Opinion, 2/3/21, at 14. While the court did not make an explicit finding of need, consistent with the purpose of enabling Wife to defend this divorce action without being placed at a financial disadvantage, the court considered "Wife's necessity, and the limited extent of Wife's separate assets." *Id*. The court then concluded that the award of counsel fees was justified in light of "the parties' relative incomes, . . . Wife's financial obligations, and the limited assets and alimony awarded to her in this divorce litigation[.]" *Id*. As the certified record supports the trial court's determination regarding Wife's financial obligations and the parties' relative incomes, we affirm this holding as well. ***Schultz***, ***supra*** at 181 (stating, we review a fee award for an abuse of discretion).

We next address Husband's assertion that the trial court erred in potentially awarding Wife a non-marital portion of the FedEx pension and the

FedEx sponsored 401(k) retirement plan. For the following reasons, no relief is due.

Instantly, both the 401(k) retirement plan and the FedEx pension are defined contribution plans that are included in the marital estate and subject to division. In addition, based on the stipulated date of separation and the evidence Husband presented during the hearing, the special master calculated the marital value of both plans. The trial court adopted these figures by explicitly incorporating the report and recommendation into the divorce order, subject to a single alteration that is not relevant to this issue.

Where, as here, the marital estate lacks sufficient assets to allow a trial court to immediately offset the marital value of pension benefits at equitable distribution, a trial court employs the "deferred distribution" method, which "generally requires the court to retain jurisdiction until the pension is collected, at which point the pension is divided according to the court's order. This method is more practical where the parties lack sufficient assets to offset the marital value of the pension." ***Jagnow v. Jagnow***, 258 A.3d 468, 472 (Pa.Super. 2021). Significantly, however, deferred distribution does not utilize the present value of the retirement benefit as this method requires that the nonemployee spouse receive equitable share of benefits only when they are actually received. ***See*** 17 West's Pa. Prac., Family Law § 23:3 (Joanne Ross Wilder, et al., eds. 8th ed.) *citing* ***Lowry v. Lowry***, 544 A.2d 972, 982 (Pa.Super. 1988) ("Since deferred distribution does not contemplate a present

distribution of assets, no present value of the pension need be calculated"). Stated simply, deferred distribution means that the value of the plans are determined when the benefits are received.

Furthermore, the marital portion of certain types of retirement accounts, such as Husband's defined contribution pension and 401(k) plans cannot be divided without a QDRO, which "effectuates the distribution in that it creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a participant under the pension plan." *Id*. (quotation and citation omitted) (cleaned up). Essentially, the QDRO establishes the value of the retirement benefit, delineates the rights of each spouse, and provides specific instructions as to how the benefits should be distributed.

With these principles in mind, we address Husband's contention of trial court error. Critically, Husband does not contest the trial court's valuation of the marital portions of the 401(k) retirement plan and FedEx pension as $102,950.31 and $29,244.00, respectively, its award to Wife of 55% of these marital assets, or the method of distribution. Rather than contest the assets' valuation, division, or deferred distribution, Husband challenges the equitable distribution order because the order, as opposed to the special master's report, does not specifically identify the marital portions of the accounts. Husband's brief at 40-42. As phrased by Husband, the trial court erred in adopting the recommended equitable distribution order without expressly stating the marital portions of the assets.

Wife counters by highlighting the facts that the special master's report clearly identified the marital portion of the pensions and directed the parties to share the cost of the preparation and submission of two QDROs governing the anticipated distribution.

Husband has failed to convince us that the "the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will[.]" *Carney, supra* at 131 (internal quotation marks omitted). As we previously noted, in fashioning the equitable distribution award, the trial court adopted the special master's recommendation to divide the FedEx defined contribution pension and the FedEx sponsored 401(k) on a 55%-45% basis in favor of Wife, and it directed the parties to cooperate in the preparation of a QDRO to administer the distribution of both assets. *See* Special Master's Report and Recommendation, 9/8/20, at 22-23. As to Husband's claim on appeal, the recommendation noted that "The value of the account for purposes of this distribution shall be determined as of the date of distribution." *Id*.

In light of the foregoing and mindful that in adopting the special master's report and recommendation, the trial court determined that, as of the date of separation, the marital portion of the 401(k) and the defined contribution pension were $102,950.31 and $29,244.00, respectively we discern no error. Stated plainly, although the special master identified the present value of the marital portion of the retirement assets in the report and recommendation,

the trial court was not required to restate those figures in the ensuing equitable distribution order directing the deferred distribution of those benefits via QDROs. As stated hereinabove, under the deferred distribution method there is no need to calculate the present value of the respective shares. Critically, it is the QDRO, rather than the order directing its preparation that "creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a participant under [the] pension plan." *Getty v. Getty*, 221 A.3d 192, 195 n.4 (Pa.Super. 2019). As Husband failed to present case law to support his contrary assertion and neglected to offer authority to support his argument that a statement of the present marital value is required in the order, we discern no error of law or abuse of discretion in the trial court's ruling.

Husband's fourth issue concerns the credits that he was awarded based upon his post-separation payments of certain marital obligations. The following tenets inform our review. Although the trial court may award credits to a party in equitable distribution for the payment of mortgage and taxes to the spouse who does not have the use and occupancy of the real estate during separation, the award is not mandatory and may be denied as long as the total distribution scheme is equitable. *Middleton v. Middleton*, 812 A.2d 1241 (Pa.Super. 2002) (*en banc*) (credit denied where payments were voluntary and credit would result in economic injustice); *Schmidt v. Krug*, 624 A.2d 183 (Pa. Super. 1993) (credit denied where both spouses had access

to the property). Moreover, as discussed *infra*, voluntary payments of mortgages are not credits against equitable distribution in the absence of a stipulation to the contrary. **Middleton**, **supra**.

Instantly, the trial court awarded Husband credits totaling $6,366.00, representing 45% of his post-separation payments toward the mortgage and real estate taxes on the marital home. Husband contends that the court erred in failing to award him an additional amount that represents 50% of the federal tax refund that Wife received by filing individually as head of household in 2019. Husband's brief at 44. He also complains that the credit awarded by the trial court only accounted for the amount he paid toward the mortgage principle and ignored approximately $280 that he has paid in post-separation mortgage interest. **Id**. at 45. In sum, Husband contends that the court awarded him only $6,366.00 of the $7,830.29 that he believes he is due. **Id**.

In rejecting Husband's claims of error relating to the award to Husband of 45% of the mortgage and tax payments that he paid toward the marital home the parties shared post-separation, the trial court reasoned that the award was "justified under the relative financial situations of the parties and will effectuate the 55/45 distribution scheme determined by the [special master]. Trial Court Opinion, 2/3/21, at 16-17. The trial court did not specifically address the remaining aspect of Husband's exceptions relating to Wife's 2019 filing status or the $280 that Husband paid toward post-separation mortgage interest.

We do not discern an abuse of discretion. In **Middleton**, **supra**, this Court affirmed the trial court's decision to forego the credit because it "would clearly not effectuate economic justice between the parties." We highlighted that the dispossessed spouse in that case, a retired professional sports referee, earned significantly more than the wife, and even though he paid voluntary payments to the wife that were outside of the equitable distribution scheme, the credit would be burdensome upon the wife despite her award of sixty percent of the marital estate. Essentially, we deferred to the trial court's judgment. We reasoned that, since the distribution order reflected "a considered weighing of the economic standings and needs of the parties" and evinced consideration of the relevant statutory factors, the trial court's decision to forego the credit was a reasonable exercise of discretion. **Id**. at 1248.

For similar reasons, we do not disturb the court's decision in this case at bar. First, Husband is not a dispossessed spouse, as he and Wife continued to reside in the home simultaneously while legally separated. Thus, his entitlement to the mortgage credit is questionable from the outset. **Schmidt v. Krug**, 624 A.2d 183 (Pa. Super. 1993) (credit denied where both spouses had access to the property). More importantly, assuming arguendo, that Husband was entitled to a credit for the mortgage interest under the distribution scheme, the deficiency of a $126 credit, *i.e.*, forty-five percent of $280 paid in interest, would not upset the overall equitable distribution

scheme. This diminutive discrepancy is *de minimis*, particularly in light of the fact that Husband also resided in the home.

Furthermore, as to the Wife's 2019 filing status, the special master clearly identified the respective financial ramifications of Wife's decision in considering the statutory factors regarding the division of the marital estate pursuant to 23 Pa.C.S. § 3802. **See** Report of Special Master, 9/8/20, at 16-17. Nevertheless, it declined to award a corollary credit when fashioning the equitable distribution scheme in Wife's favor. **Id**. at 23 ("$6,366 to Husband to account for his credit for the payment of the mortgage and taxes throughout the year 2019"). Thus, at least implicitly, the master determined that an additional credit was not warranted under the circumstances of this case.

Once more, we defer to the judgment of the factfinder, who was fully aware of the tax ramifications in dividing the marital estate and weighed the parties' relative economic means. As noted above, Husband's annual earnings dwarf Wife's yearly wages, and the trial court's credit award is consistent with the overarching equitable distribution scheme fashioned under the totality of the circumstances. Hence, the trial court's decision to forego the additional $1,464.29 credit that Husband requested was a reasonable exercise of discretion. Accordingly, we uphold this aspect the trial court's determination. **Jagnow**, **supra** at 472 (objective of equitable distribution is to effect economic justice between parties and achieve just determination of property rights).

Finally, Husband contends that the trial court erred in failing to state in the equitable distribution order that Wife would be responsible for one-half of a $58,000 student loan from Lebanon Federal Credit Union that Husband co-signed during the marriage for the benefit of their adult son. While the loan is not in default, and there is no indication that default is imminent, Husband asserts that, if their son were to default, the would-be debt is a marital burden because it accrued during the marriage. Husband's brief at 46.

Neither the Special Master nor the trial court included the potential debt in the equitable distribution scheme, reasoning that because the loan was not in default, it is not a marital debt. In rejecting Husband's exception, the trial court further explained that, if the son did, in fact, default at some unknown point in the future, Husband had a superior ability to repay the loan.

Husband maintains that the trial court's rationale upsets the equitable distribution scheme. He argues, "It would be an inequitable result in this case if Husband were to at some point be personally and individually liable for payment of what is clearly a marital debt, as acknowledged by both parties, the Special Master and the Trial Court" *Id*. at 47. On appeal, Husband proposes that the trial court alter the equitable distribution order to read as follows:

> In the event that the parties' son would default on payment of his student loans with the Lebanon Federal Credit Union, or subsequent entity if this obligation would change to another bank or institution, and Husband were liable for payment of this obligation as a result of being a co-signor for this obligation, both Husband and Wife would be equally responsible for payment of

the monthly payment on this loan obligation so long as Husband would be liable and responsible for said payment.

*Id* at 48.

We agree with Husband's underlying contention. Although there is a dearth of Pennsylvania authority regarding the specific question relating to the equitable distribution of one parent's contingent liability to satisfy a child's student loan based upon a personal guarantee, it is axiomatic that marital debts generally encompass **all** liabilities accrued during the marriage, whether contracted for by one or both of the parties. *Goodwin v. Goodwin*, 244 A.3d 453 (Pa.Super. 2020), *appeal granted*, 130 MAL 2021, 2021 WL 4204802 (Pa. Sept. 16, 2021) ("We have long held debts incurred during marriage are marital debt, regardless of which party incurred them."). While it is possible that Husband will never be called upon to perform his promise to repay the loan, the basic liability is marital insofar as Husband cosigned the loan during the marriage. Although the trial court is correct in stating that it may not equitably divide a debt which does not exist, it is equally accurate to state that the trial court cannot ignore addressing the ultimate responsibility for this marital liability simply because it may never come due. The question is not whether Husband will ever be liable to the Lebanon Federal Credit Union for his son's loans, but rather, how to equitably divide responsibility for this potential marital liability. As the trial court improperly excluded the contingent liability from its equitable distribution determination, we are constrained to vacate this portion of the equitable distribution order for the court to address

- 23 -

it.[3] The trial court is not required to adopt Husband's suggested provision but it must identify how the latent liability is to be divided in a manner that is consistent within the overall distribution scheme.

Order affirmed in part, vacated in part, and remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/27/2022

---

[3] In light of the equitable distribution scheme as a whole, which awarded Wife 55% of the modest marital estate, the certified record will not sustain the trial court's alternate rationale that Husband is in a superior position to repay the $58,000 loan independently if their son defaults.