J-S01014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL LAUSCH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAN LING | : | No. 908 MDA 2021 |

Appeal from the Decree Entered May 21, 2021
In the Court of Common Pleas of Berks County Civil Division at No(s):
12-20957

| | | |
|---|---|---|
| MICHAEL LAUSCH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAN LING | : | |
| | : | |
| Appellant | : | No. 834 MDA 2021 |

Appeal from the Decree Entered May 21, 2021
In the Court of Common Pleas of Berks County Civil Division at No(s):
12-20957

BEFORE: BOWES, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.: **FILED: MARCH 8, 2022**

Michael Lausch ("Husband") and Shan Ling ("Wife") cross-appeal from the divorce decree entered May 21, 2021. We affirm.

We provide the following background. Husband and Wife met in Shanghai and were married there in 2000. Of relevance to this appeal, Wife

_____

[*] Retired Senior Judge assigned to the Superior Court.

had purchased a condominium in Shanghai before they were married. Husband and Wife subsequently moved to the United States, where their daughter was born in 2003. In 2004, Husband purchased a family residence in his name in Berks County, Pennsylvania.

Husband and Wife separated in 2012, and Husband filed for divorce that same year. The court appointed a divorce master, who held hearings on October 16, 2017, March 16, 2018, and May 14, 2018.[1] The master filed his report and recommendation on August 28, 2018. Wife filed several exceptions. Both parties filed briefs and the matter was argued on December 9, 2020. In the divorce decree entered May 21, 2021, the trial court sustained in part and denied in part Wife's exceptions.

Wife timely filed an appeal from the decree, and Husband timely filed a cross appeal pursuant to Pa.R.A.P. 903.[2] The trial court did not order either party to file concise statement pursuant to Pa.R.A.P. 1925(b), and none was filed. In lieu of authoring a Rule 1925(a) opinion, the trial court directed us to its May 21, 2021 opinion addressing Wife's exceptions.

Husband presents the following issues for our review:

---

[1] Due to difficulties in communicating with Wife, Wife's court-appointed counsel was permitted to withdraw. Thus, at the hearings, Wife represented herself, with the assistance of a guardian *ad litem* and an interpreter.

[2] **See** 1 Pa.C.S. § 1908 ("Whenever the last day of any such period [of time referred to in any statute] shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.").

I. Whether the trial court incorrectly found that the divorce master erred when he lowered Wife's distribution percentage since she failed to file a pre-trial statement and exhibits timely.

II. Whether the trial court erred when reducing the value of Wife's pre-marital property in China to a value that is wholly unsupported by evidence.

III. Whether the trial court erred when finding that Wife was not responsible for a 2011 tax liability due to Wife[']s refusal to sign a joint tax return when her refusal resulted in a diss[i]pation of marital assets.

Husband's first-step brief at 3 (unnecessary capitalization omitted).[3]

Wife, for her part, presents the following issues for our consideration:

I. Whether the trial court committed an abuse of discretion when it declined to award Wife the fair rental value of the marital home.

II. Whether the trial court committed an abuse of discretion when it awarded Wife only 60% of the marital assets.

III. Whether the trial court committed an abuse of discretion when it awarded the marital home to Husband.

Wife's second-step brief at 7 (renumbered).[4]

We begin with the following principles, which govern our review:

Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.

_____

[3] Since the briefing letter directed the parties to identify their briefs in this manner, we use consistent terminology herein.

[4] In Wife's brief, she first re-listed Husband's three issues in her statement of questions, resulting in the issues she raises being numbered IV, V, and VI.

***Busse v. Busse***, 921 A.2d 1248, 1257 (Pa.Super. 2007) (citation omitted).

> This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.
>
> Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

***Carney v. Carney***, 167 A.3d 127, 131 (Pa.Super. 2017) (cleaned up).

At the outset, we observe that the trial court admonished both Husband and Wife before ruling on Wife's exceptions, noting that the

> record is impaired by the failure of the parties to provide valuation for certain assets of substantial value, by the secretive nature of both parties, and by their willingness to resort to conjecture rather than facts in their presentations. Both the Master and this [c]ourt were severely hampered in attempting to make a fair and accurate determination of the marital estate. Accordingly, in ruling on Wife's exceptions, this [c]ourt will base its determinations solely on the valid evidence presented. If the decisions here do not reflect the reality of the parties' financial circumstances, the parties have only themselves to blame.

Trial Court Opinion, 5/21/21, at 5.

With this framework in mind, we turn to the issues raised by Husband and Wife.

- 4 -

**Equitable Distribution of Marital Assets**

Husband and Wife both challenge the equitable distribution of the marital assets. By way of background, the divorce master lowered Wife's distribution percentage to 54% as a sanction for not complying with Pa.R.C.P. 1920.33. Wife filed an exception to this ruling, which the trial court sustained. Nonetheless, the trial court denied Wife's request to increase her share to 80% and instead imposed a 60-40 split in Wife's favor.

Husband argues that the trial court incorrectly found that the divorce master erred when lowering Wife's distribution percentage because she failed to file an inventory, pre-trial statement, or a listing of exhibits prior to the divorce master's hearing, which violated Rule 1920.33 and resulted in "an oftentimes confusing and chaotic" hearing as Wife introduced exhibits to which Husband had no notice. Husband's first-step brief at 6, 8-9. Thus, he contends that the divorce master appropriately lowered Wife's portion of the distribution scheme to 54% as a sanction for her non-compliance. *Id*. at 9.

Wife, on the other hand, argues that the trial court should have awarded her 80% of the marital estate and it abused its discretion in only awarding her 60%. *See* Wife's second-step brief at 24-29. According to Wife, the court gave insufficient weight to "Wife's mental illness, the disparity in earning capacities and retirement funds, the disparity in opportunities to increase and acquire capital assets, Wife's not being awarded alimony, Wife's not being able

to receive Social Security benefits through her employment, and Husband's dissipation of marital assets[.]" *Id*. at 29.

We begin our review with an examination of Rule 1920.33, which was amended three times during the pendency of this case, *i.e.*, after the first hearing, after the third hearing, and after the parties filed their cross appeals. As Husband contends Wife violated this rule as a result of her inaction **before** the hearings, we utilize the version of Rule 1920.33 that was in effect from October 1, 2016 to January 5, 2018. This version provided as follows:

> **Rule 1920.33**. Joinder of Related Claims. Equitable Division. Enforcement.
>
> **(a)** If a pleading or petition raises a claim for equitable division of marital property under Section 3502 of the Divorce Code, the parties shall file and serve on the other party an inventory, which shall include the information in subdivisions (1) through (3) and shall be substantially in the form set forth in Pa.R.C.P. No. 1920.75. Within 20 days of service of the moving party's inventory, the non-moving party shall file an inventory. A party may not file a motion for the appointment of a master or a request for court action regarding equitable division until at least 30 days following the filing of that party's inventory.
>
> The inventory shall set forth as of the date of separation:
>
>> **(1)** a specific description of the marital assets, which either or both parties have a legal or equitable interest, individually or jointly with another person, the name of the co-owners, if applicable, and the marital liabilities, which either party incurred individually or jointly with another person, and the name of any co-debtors, if applicable;
>>
>> **(2)** a specific description of the assets or liabilities claimed to be non-marital and the basis for such claim; and

- 6 -

**(3)** the estimated value of the marital and non-marital assets and the amount due for each marital and non-marital liability.

**(b)** Within the time required by order of court or written directive of the master or, if none, at least 60 days before the scheduled hearing on the claim for equitable division, the parties shall file and serve upon the other party a pre-trial statement. The pre-trial statement shall include the following matters, together with any additional information required by special order of the court:

**(1)** a list of assets, which may be in chart form, specifying:

**(I)** the marital assets:

**A.** the value;

**B.** the date of the valuation;

**C.** the value of any non-marital portion;

**D.** the facts and documentation upon which the party relies to support the valuation; and

**E.** any liens or encumbrances associated with the asset.

**(II)** the non-marital assets:

**A.** the value;

**B.** the date of the valuation;

**C.** the facts and documentation upon which the party relies to support the valuation; and

**D.** any liens or encumbrances associated with the asset.

**(2)** the name and address of the expert witness(es) the party intends to call at trial. A report of each expert witness listed shall be attached to the pre-trial statement. The report shall describe the expert's qualifications and experience, state the substance of the facts and opinions to which the expert is expected to testify and summarize the grounds for each opinion;

**(3)** the name, address, and a short summary of the testimony of the witnesses, other than the party, whom the party intends to call at trial;

**(4)** a list of exhibits that the party expects to offer into evidence. Exhibits not exceeding three pages shall be attached to the pre-trial statement and shall have an identifying exhibit number affixed to or incorporated into the document, and exhibits exceeding three pages shall be described specifically and shall have an exhibit number in the description;

**(5)** the party's gross income from all sources, payroll deductions, net income, and the party's most recent state and federal income tax returns and pay stubs;

**(6)** if the party intends to offer testimony as to his or her expenses, an Expense Statement in the form required by Pa.R.C.P. No. 1910.27(c)(2)(B);

**(7)** if there is a claim for counsel fees, the amount of fees to be charged, the basis for the charge, and a detailed itemization of the services rendered;

**(8)** the description and value of disputed tangible personal property, specifically the personalty contemplated by item number 25 of the form in Pa.R.C.P. No. 1920.75, the method of valuing each item, and the evidence, including documentation, to be offered in support of the valuation;

**(9)** a list of liabilities, which may be in chart form, specifying:

    **(I)** the marital liabilities:

**A.** amount of the liability;

**B.** date of the valuation;

**C.** amount of any non-marital portion;

**D.** the facts and documentation upon which the party relies to support the valuation; and

**E.** amount, if any, of payments made on the liabilities after the date of separation.

**(II)** the non-marital liabilities:

**A.** amount of the liability;

**B.** date of the valuation; and

**C.** the facts and documentation upon which the party relies to support the valuation.

**(10)** a proposed resolution of the economic issues raised in the pleadings.

**(c)** If a party fails to file either an inventory, as required by subdivision (a), or a pre-trial statement, as required by subdivision (b), the court may make an appropriate order under Pa.R.C.P. No. 4019(c) governing sanctions.[5]

---

[5] Rule 4019(c) provides as follows:

(c) The court, when acting under subdivision (a) of this rule, may make

(1) an order that the matters regarding which the questions were asked, or the character or description of the thing or land, or the contents of the paper, or any other designated fact shall be taken to be established for the purposes of the

*(Footnote Continued Next Page)*

**(d)**

> **(1)** A party who fails to comply with a requirement of subdivision (b) may[6] be barred from offering testimony or introducing evidence in support of or in opposition to claims for the matters omitted.
>
> **(2)** A party may be barred from offering or introducing any evidence that is inconsistent with or goes beyond the fair scope of the information set forth in the pre-trial statement.

_____

> action in accordance with the claim of the party obtaining the order;
>
> (2) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting such party from introducing in evidence designated documents, things or testimony, or from introducing evidence of physical or mental condition;
>
> (3) an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or entering a judgment of _non pros_ or by default against the disobedient party or party advising the disobedience;
>
> (4) an order imposing punishment for contempt, except that a party may not be punished for contempt for a refusal to submit to a physical or mental examination under Rule 4010;
>
> (5) such order with regard to the failure to make discovery as is just.

Pa.R.C.P. 4019(c).  Subdivision (a) of this rule provides that "[t]he court may, on motion, make an appropriate order[.]"  Pa.R.C.P. 4019(a).

[6] The prior version, which is not applicable here, provided that a party "shall, except upon good cause shown" be barred from offering such testimony or evidence.  As discussed _infra_, the divorce master applied the prior version.

**(e)** An order entered by the court pursuant to Section 3502 of the Divorce Code may be enforced as provided by the rules governing actions for support and divorce and in the Divorce Code.

Pa.R.C.P. 1920.33 (effective 10/1/16-1/5/18).

In considering Wife's exception to the master's equitable division, the trial court offered the following analysis:

In his report, the Master states that "[n]ormally, under the circumstances which weigh in Wife's favor the Master would consider a 58-60% division of the assets in favor of Wife." However, the Master awarded Wife 54% of the marital assets because, *inter alia*, she violated Pa.R.C.P. 1920.33, which requires the parties to file an inventory and pre-trial statement. Wife contends that a violation of Rule 1920.33 does not justify a reduction in the amount of the marital estate the Master otherwise would have awarded Wife.

. . . .

The Master expressed concern about Wife's failure to follow Rule 1920.33 which caused the following problems:

Husband had difficulty in preparing his case because he did not know what information and/or documents would be presented. The hearing, as the Master assumes the Notes of Testimony will demonstrate, was rather unruly due to frequent objections to Wife's attempt to provide testimony or documents which had not been disclosed. Lastly, the Master is at a disadvantage because he lacks critical information and/or documents necessary to make an informed decision.

The Master then looked to Rule 1920.33(d)(1) and (2)'s provisions for the impositions of sanctions when a party fails to comply with this Rule, except upon "good cause shown." The Master concluded that Wife had a "limited" good cause exception because she represented herself at the hearings, she suffered from depression and anxiety, she was not fluent in English, and she lacked knowledge of the law. Nonetheless, he observed that

- 11 -

Wife was capable of amassing a good deal of information about Husband's finances and was aware her Shanghai apartment would be an issue because she submitted into evidence Exhibit D-6, a description of land ownership in China. He concluded that a sanction should be applied for violation of Rule 1920.33, *viz*, a reduction of Wife's share from 60% to 54%.

We think the Master misapplied Rule 1920.33. To begin with the phrase "upon good cause shown" does not appear in the present iteration of Rule 1920.33(d)(1) and (2). . . . More to the point, Rule 1920.33(d)(1) and (2) confines its sanctions to barring a party from "offering testimony or introducing evidence." It cannot be the basis for determining a division of marital property. Equitable distribution must be based upon the specific provisions of the Divorce Code and case law. If the Master or Husband thought Wife violated Rule 1920.33 either could have sought an appropriate order or the Master could have refused to admit Wife's documents into evidence or barred her from testifying. He did none of these things. He admits "[i]t is obviously too late to preclude Wife from introducing certain testimony or exhibits." Because Rule 1920.33 does not provide a basis for reducing Wife's share of the marital estate we will grant Wife's exception on this issue.

Trial Court Opinion, 5/21/21, at 33-36 (citations omitted).

We agree with the trial court that the divorce master applied the incorrect version of Rule 1920.33. Under the applicable version of Rule 1920.33, the only listed sanction that may be applied for non-compliance is barring the offending party from offering testimony or introducing evidence regarding omitted matters. **See** Rule 1920.33(d) (effective 10/1/16-1/5/18). Thus, the master exceeded his authority when he lowered Wife's distribution

- 12 -

share as a sanction for her non-compliance with Rule 1920.33 and we affirm the trial court's decree insofar as it granted that exception.[7]

We now turn to Wife's contention that the trial court should have increased her share to 80%. In considering an equitable distribution scheme, a court looks to the following relevant statutory factors:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

---

[7] We note that pursuant to Rule 1920.33(c), the trial court's power to sanction is broader, as it has the authority to enter an appropriate order sanctioning a non-compliant party under Rule 4019(c). However, such an order can only be made upon motion and no such motion was filed here. *See* Pa.R.C.P. 4019(a)(1), (c).

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502 (a). "The weight to be given to these statutory factors depends on the facts of each case and is within the court's discretion." *Mercatell v. Mercatell*, 854 A.2d 609, 611 (Pa.Super. 2004) (citation omitted).

In considering the master's report, the trial court found that the master "thoroughly reviewed all the equitable distribution factors" and took "into account the particulars of Wife's situation." Trial Court Opinion, 5/21/21, at 38. The trial court explained the master's balancing of these considerations and resulting recommended split as follows:

> [T]he Master noted that one-half of the total assets and their appreciation are non-marital, so that Husband will receive a disproportionate share of the total assets. . . and assure him a decent economic future. [The Master further held as follows:]
>
> > Wife, on the other hand, will have to rely almost entirely on her share of the marital portion of the assets. She is unlikely to obtain substantial employment, has no retirement or pension plan and does not have medical benefits at the present time[. T]he Master has attempted to assure that each party

- 14 -

has a decent economic future and in doing so must tilt the division of marital assets in Wife's favor.

Our review of the Master's report leads us to conclude that in dividing the parties' assets the Master has taken into account the particulars of Wife's situation. He thereby awarded her the majority of the marital estate. . . . Certainly, there is a stark contrast between Wife's comparatively humble resources and Husband's diverse and extensive assets. Wife's economic horizons are dim; Husband's financial future is potentially bright. Thus, there must be a division that arises out of the marked disparities between the parties' economic circumstances. This [c]ourt finds that the percentage which would accomplish economic justice would be to award Wife the Master's "normal" 60-40 split. Therefore, we will divide the marital estate 60%-40% in favor of Wife. Although our division varies somewhat from that of the Master, we agree with his conclusion that "Husband will hardly be left destitute."

. . . .

Although there is significant economic inequality between the parties as discussed above, the record undoubtedly proves that the bulk of the marital estate is based upon Husband's investments and pension which predated the marriage. In making a distribution, we must look, *inter alia*, at both parties' contributions. While acknowledging Wife's disadvantageous position we cannot ignore the fact that she brought one asset into the marriage, acquired little during the marriage, and that the money she will receive comes from the appreciation of Husband's premarital assets. Wife is entitled to economic justice, but not a windfall. Under the facts of this case, to award Wife 80% of the marital estate would result in an inequitable distribution. Therefore, we will grant her tenth exception by awarding her 60% of the marital estate but we will deny that part of her exception which asks for an 80-20 split.

*Id*. at 39-42 (cleaned up).

Wife has not convinced us that the trial court's decision was manifestly unreasonable or the product of bias or ill-will, and therefore, we find no abuse of discretion in the court's crediting of the master's consideration of the

- 15 -

statutory factors or the court's conclusion that a 60-40 split in favor of Wife would be equitable. *See Carney*, *supra*.

### Valuation of Pre-Marital Property in China

Husband next argues that the trial court erred in reducing the value of Wife's pre-marital property, *i.e.*, the aforementioned condominium in China, because the court's valuation was unsupported by the evidence. Husband's first-step brief at 9-11. According to Husband, Wife intentionally failed to comply with Rule 1920.33 so that this property's value would be diminished. *Id*. at 10. He contends that "[c]ommon sense tells a reasonable person that values of real estate would have increased over a nearly twelve[-]year marriage as in general property values do increase." *Id*. at 10-11. Although he acknowledges that the master "may have overstepped his duty by doing independent research on the value of the property," he argues that the master's valuation was actually lower than Husband's valuation of an increase of at least $120,000 over the course of the marriage, but that he was "willing to concede to the $90,000 the Master assigned as the increase in value to the property." *Id*. at 11. As such, Husband requests that the master's valuation of the condominium at $90,000 in marital value be reinstated. *Id*.

By way of background, the contested pre-marital property is a condominium Wife purchased in Shanghai in 1994 for 30,000 Yuan, or approximately $5,000 U.S. dollars at 1994 exchange rates. Relying on his own independent research, the master found that the property was worth

$120,000, of which $90,000 was marital property. In sustaining Wife's exception to this valuation, the trial court provided the following analysis:

> Husband testified that Wife advised him that the property was worth $30,000.00 in 2003 and in 2011 was worth [$]150,000.00. Wife denied the accuracy of these values. The Master found that the property was worth $120,000.00, $90,000.00 of which is marital property. In making this finding the Master noted "both parties acknowledge that they did not know the value of the property at the present time" and that "no appraisal was ever done". The Master then states, "he is uncertain as to how to value the land". Believing that the property had likely increased in value during the course of the marriage, but being frustrated by the absence of any appraisals or other evidence to support any accurate value, the Master admitted to conducting his own research concerning China's liberalization of land ownership policies and the increase in Shanghai real estate values. Although he was well-intentioned, the Master erred when he ventured beyond the record and conducted independent research to which neither the [c]ourt nor the parties are privy.
>
> . . . .
>
> This [c]ourt finds that, while it could well be that the property has increased in value during the course of the marriage and that the increase in value would be considered a marital asset, there is no evidence to quantify what the increase in value would be. With the only competent evidence being the undisputed testimony of Wife regarding the cost to purchase the property, this [c]ourt determines that the property is to be valued at $5,000.00, the cost to Wife at the time of purchase, and therefore is a non-marital asset, with no finding of any increase in value during the course of the marriage.

Trial Court Opinion, 5/21/21, at 11-12 (citations omitted).

Husband argues that the trial court's calculation is not supported by the record. However, it is not the fault of the trial court that the record lacked any evidence of an increase in the property's value. It is well-established that "[w]hen valuing assets, a trial court must base its decision on evidence of

record" and that neither the trial court nor this Court may "uphold a trial court's order on the basis of off-the-record facts." **Conner v. Conner**, 217 A.3d 301, 313 (cleaned up).

At the hearings, Husband testified that Wife told him the condominium could have been sold for $150,000 in 2011, and referenced a magazine article about rising property values in Shanghai. Wife, on the other hand, testified that she never told Husband the condominium could be sold for that amount and was adamant that the Chinese government would not permit her to sell the condominium. However, neither Wife nor Husband offered any evidence to support an accurate valuation of the property at the time of the hearings.

Lacking any evidence as to the current value, the master independently sought evidence outside the record in an attempt to value the property. That was improper. Thus, the trial court appropriately disregarded the master's recommendation and limited itself to the evidence of record in determining the condominium's value. We discern no abuse of direction in the trial court's application of a value based upon the only uncontroverted evidence, *i.e.*, the value of the condominium at the time of purchase. **See Smith v. Smith**, 653 A.2d 1259, 1267 (Pa.Super. 1995) (citation omitted) ("When one party offers uncontradicted evidence of the value of a particular marital asset, this Court may adopt that value even if the resulting valuation would have been different if more accurate and complete evidence had been presented."). Accordingly, Husband's second claim fails.

**Tax Liability**

Finally, Husband argues that the trial court erred in finding Wife was not responsible for a 2011 tax liability that was paid by Husband as a result of Wife's refusal to sign the 2011 joint tax return in 2014, which resulted in a dissipation of marital assets. Husband's first-step brief at 12. According to Husband, "the Master's recommendation holding Wife responsible for her failure to sign the [t]ax [r]eturn was correct because the tax liability was incurred in 2011 during the marriage" and at that time, "Wife enjoyed the benefits of the income that was included on the [t]ax [r]eturn." *Id*. at 12-13.

In sustaining Wife's exception to the master's imposition of the 2011 tax liability, the trial court offered the following background and analysis:

> Initially, Husband prepared a 2011 joint federal tax return seeking a refund of $2,797.00. In 2014, Husband asked Wife to sign the 2011 return, but she refused because she did not understand the $389,000.00 loss claimed on the return.
>
> Husband testified that he attempted to file the 2011 return electronically, without Wife's signature, but received an email from Turbo Tax rejecting the filing. He testified that because of his investments he needed "backup information" and thus had to file a paper return. Husband prepared the return and mailed it to the [Internal Revenue Service ("I.R.S.")] but the return was lost. When Husband filed his 2013 return, he received a notice from the I.R.S. that his 2011 return was never filed. Husband filed a second 2011 paper joint return in 2013, but this was returned by the I.R.S. in May 2014 stamped "Returned for Signature . . . ." Thereafter, Husband requested Wife sign the 2011 return, but she refused. Wife testified Husband did not ask her to sign the return.
>
> Husband then petitioned this court to require Wife to sign the document, but the petition was dismissed on September 22, 2014 upon Husband's counsel's representation that Husband wished to withdraw the petition. He then filed an individual return

- 19 -

incurring the [$7,760.00 in] taxes, interests and penalties in dispute.

Wife argued that she should not be responsible for the taxes, interests and penalties because Husband had not explained how he filed a joint return with Turbo Tax and later with the I.R.S. without Wife's signature, then waited until 2014 to ask the [c]ourt to compel [her] signature on the return, that Wife was justified in not signing the return because she did not understand how the $389,000.00 loss arose and that Husband did not document the taxes, interests and penalties claimed.

This [c]ourt disagrees with the Master's determination that Wife should be responsible for the $7,760.00. Wife has no legal duty to agree to file a joint return. While filing a joint return would have likely resulted in a joint savings, and therefore Wife's refusal could arguably be categorized as a dissipation of assets, in this case, Husband cannot make this argument for he did not provide Wife with a sufficient explanation of his claim of a $389,000.00 loss. Husband admits that he would not disclose his financial dealings to Wife, which included extensive stock trading, even being secretive. Without full disclosure of the nature and extent of the $389,000.00 loss sufficient to provide a comprehensive basis for Wife to ascertain the veracity of the proposed loss, execution by her of the tax return would be inappropriate and could even result in sanctions against her if the claimed loss was determined by the [I.R.S.] to be inaccurate or fraudulent. If Husband wanted to receive the savings inuring from the filing of a joint return, he should have provided full disclosure with comprehensive documentation. Husband's attempt to file the joint tax return without Wife's signature, then insisting on her signing the return, or requiring her to pay for the additional taxes, interest, and penalties is improper.

Trial Court Opinion, 5/21/21, at 13-15 (citations omitted).

We agree with the trial court's analysis and conclude that it did not abuse its discretion in sustaining this exception. *See Busse*, *supra*; *Carney*, *supra*.

### Fair Rental Value of Marital Home

We turn now to Wife's remaining claims. First, she argues that the trial court committed an abuse of discretion when it declined to award her the fair rental value of the marital home. Wife's second-step brief at 18. According to Wife, it was undisputed that the home was a marital asset, the mortgage was fully paid prior to separation, Wife was the party out of possession, Husband resided in the home with his girlfriend and her child at the time of the hearings, and Husband requested credits pursuant to the vanishing credit theory and for house-related expenses incurred between the date of separation and the first hearing. *Id*. at 19-20. Thus, Wife contends the "court abused its discretion when it refused to apply the general rule to award the non-possessing spouse fair rental value." *Id*. at 20.

Wife acknowledges that the mortgage was paid as a result of Husband's income, but contends this was only possible because the parties agreed Husband would be the "primary breadwinner[,]" "that Wife would stay home and raise their child, and that they would live frugally during the marriage." *Id*. at 20-21. Additionally, she argues that the court erred in awarding the marital home to Husband and valuing the marital estate based upon a 2015 appraisal that did not take into account the explosion in home values in the intervening years. *Id*. at 21-22.

We consider this issue mindful of the following:

> The award of rental value is within the sound
> discretion of the trial court. The basis of the award

of rental value is that the party out of possession of jointly owned property (generally the party that has moved out of the formal marital residence) is entitled to compensation for her/his interest in the property.

Generally, parties have an equal one-half interest in the marital property, and thus the dispossessed party will be entitled to a credit for one-half of the fair rental value of the marital home. This Court has discussed the analysis for deciding whether to award rental credit:

> First, the general rule is that the dispossessed party is entitled to a credit for the fair rental value of jointly held marital property against a party in possession of that property, provided there are no equitable defenses to the credit. Second, the rental credit is based upon, and therefore limited by, the extent of the dispossessed party's interest in the property. Third, the rental value is limited to the period of time during which a party is dispossessed and the other party is in actual or constructive possession of the property. Fourth, the party in possession is entitled to a credit against the rental value for payments made to maintain the property on behalf of the dispossessed spouse. Generally, in regard to the former marital residence, payments made on behalf of the dispossessed spouse will be one-half of the expenses including debt service on the property. This is so because equity places a presumption upon the dispossessed spouse of responsibility for expenses to the extent of her/his ownership interest which is generally one-half.

*Lee v. Lee*, 978 A.2d 380, 385–86 (Pa.Super. 2009) (cleaned up).

Here, the trial court concluded as follows:

Wife contends she was forced out of the marital home as of December 1, 2012, and that Husband, his girlfriend and her family have lived there continuously since Wife left. By Wife's calculations, because Husband is not entitled to any of the deductions requested by him, the fair rental value is $945.40 per month. This monthly rent, multiplied by 81 months, the time

- 22 -

between Wife's departure from the marital home and the time the Master filed his report, equals $76,585.50.

The Master did not discuss fair rental value in his report. He did find as a fact that "Husband has resided in the home since separation and has paid all expenses associated with ownership and occupancy of the premises." At the hearing Wife raised the issue that Husband lives at the house with his girlfriend and her child but the Master considered this irrelevant to the parties' financial issues. The Master omits from his report any reference to Husband's girlfriend or her child living at the residence.

. . . .

Here, Husband testified that from 2012 to 2017 he paid school and property taxes, homeowner's insurance, furnace and central air conditioning expenses, maintenance, grounds keeping, and miscellaneous expenses related to the property's upkeep. These expenses totaled $51,026.74. Husband testified that he paid household expenses out of his own earnings. Wife admitted that the mortgage was always paid. Husband testified that he kept the house up and nothing was unattended at the home and that he maintained the property's status quo.

Wife's calculations are premised on a fair rental value of $1,895.00 per month. This figure is taken from Exhibit D-4 apparently derived from Zillow which sets forth the "rent Zestimate" for the marital home at $1,895.00 per month. The Master apparently rejected this figure as he was empowered to do so. Additionally, Husband provided all of the down payment for the house, . . . paid off the mortgage, and maintained a home equity line of credit secured by the property.

The award of the fair rental value credit is discretionary and not mandatory and is subject to equitable defenses. Here the Master included the value of the marital home in the total value of the marital estate of which Wife received a percentage. Given that Wife paid little or nothing toward purchase or maintenance of the home and will receive a share of its value upon distribution, the omission of a fair rental value credit does not impair the equity of the total distribution of the marital estate.

Trial Court Opinion, 5/21/21, at 27-30 (citations omitted). Based on the foregoing analysis, the trial court denied Wife's exception to the master's failure to award her a fair rental value credit.

The trial court did not abuse its discretion in concluding that equitable considerations warranted deviation from the general rule in favor of credit for rental value. Although Wife suffers from a financial discrepancy, Husband has made all requisite payments associated with the home, including maintenance costs. Additionally, the value of the home was included in the total value of the marital estate, of which Wife will receive 60% upon distribution. Accordingly, this claim fails.

**Awarding Marital Home to Husband**

Wife next argues that the trial court abused its discretion in awarding the marital home to Husband. Wife's second-step brief at 29-30. According to Wife, because "[n]either the Divorce Master nor the trial court explained why it was equitable to award the marital home to Husband. . . , their decisions are necessarily an abuse of discretion." *Id*. at 30.

Before we reach this issue, we must determine whether it was preserved for review.

> [P]ursuant to Pa.R.A.P. 302(a), "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Further, Pa.R.C.P. 1920.55–2(b) explains that "[e]ach exception [to a master's report] shall set forth a separate objection precisely and without discussion. Matters not covered by exceptions are deemed waived unless, prior to entry of the final decree, leave is granted to file exceptions raising those matters."

- 24 -

*Cook v. Cook*, 186 A.3d 1015, 1027 (Pa.Super. 2018). Our review of the certified record reveals that Wife did not challenge the master's recommendation to award the marital home to Husband before the trial court. Accordingly, this issue is waived.

**Ownership of $10,000 Certificate of Deposit**

Finally, Wife argues that the trial court abused its discretion when it determined Wife owned a $10,000 certificate of deposit ("CD") at the time of separation. Wife's second-step brief at 30-32. Before reaching the merits of this issue, we must address Wife's failure to include this issue in her statement of questions.

Pursuant to Rule 2116, "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a). Here, Wife failed to include this issue in her statement of questions. Accordingly, Husband argues in his reply brief that this issue should be dismissed. Husband's third-step brief at 10-11. In doing so, he labels it as Wife's fourth issue, as it was the fourth issue she raised as a cross-appellant in the argument section of her brief. Wife responds by mistakenly claiming that her fourth issue was the fourth issue listed in her statement of questions, *i.e.*, the first issue she raised as a cross-appellant. Wife's fourth-step brief at 1-2; *see also supra* n.2. In her response, Wife concedes that she did not raise this fourth issue in her statement of questions, as she states that she raised six issues in her statement of questions, which corresponds

- 25 -

accurately with her listing of Husband's three issues, and then her three issues. *Id*. at 2.

Although Rule 2116 states that this Court will not consider a question that is not included in the statement of questions involved, this Court has held that "such a defect may be overlooked where an appellant's brief suggests the specific issue to be reviewed and appellant's failure does not impede our ability to address the merits of the issue." *Werner v. Werner*, 149 A.3d 338, 341 (Pa.Super. 2016) (quoting *Bailey v. Storlazzi*, 729 A.2d 1206, 1210 (Pa.Super. 1999)) (cleaned up). *See also* 20A West's Pa. Prac., Appellate Practice § 2116:5 (collecting cases in which issues not included in the statement of questions were addressed). Wife raised this issue as an exception to the master's report and the trial court addressed the issue, ultimately denying her exception. As the issue is readily ascertainable, Wife preserved it below, and the trial court addressed it, our review is not impeded by Wife's failure to include this issue in her statement of questions involved, and we therefore do not find this issue waived.

Turning to the merits of this issue, we conduct our review mindful of the following:

> The Divorce Code does not specify a particular method of valuing assets. The trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties.
>
> > In determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property. Where the

> evidence offered by one party is uncontradicted, the court may adopt this value even though the resulting valuation would have been different if more accurate and complete evidence had been presented.

*Smith v. Smith*, 904 A.2d 15, 21–22 (Pa.Super. 2006) (cleaned up).

In denying Wife's exception to the master's finding that she possessed a $10,000.00 CD, the trial court offered the following background and analysis:

> The record shows that Wife owned two $5,000.00 CDs connected to the parties' joint account. One matured after 21 months, the other after 27 months. Wife testified that, on September 27, 2011, after both $5,000.00 CDs matured, she purchased the Steinway piano for the parties' child for $10,000.00. She stated that the bank statements for the period of March 24, 2012 through September 26, 2012 established that the two $5,000.00 CDs were no longer held in the account.
>
> Husband submitted Exhibit P-43 setting forth that in 2010 Wife owned two Wells Fargo CDs, one of which matured after 21 months, the other maturing after 27 months. Husband testified that he did not know what happened to these CDs. Husband also noted, in Exhibit P-72, Husband's "asset summary", his belief that Wife possessed a CD valued at $10,000.00.
>
> It appears from the record that the $10,000.00 CD [described in P-72] is separate and distinct from the two $5,000.00 CDs [testified to by Husband and Wife]. It may well be that Wife used the money received from the two $5,000.00 CDs to purchase the piano, but those transactions bear no relation to the $10,000.00 CD which the Master found is currently in Wife's possession, believing Husband's recollection. Th[e trial c]ourt will not disturb the Master's finding that Husband was credible on this issue.

Trial Court Opinion, 5/21/21, at 9 (citations omitted).

Wife argues that because Husband testified that he took care of his own finances while Wife took care of hers, his testimony regarding her finances

should not be deemed credible and it was an abuse of discretion for the trial court to find that Wife owned a CD worth $10,000.00. Wife's second-step brief at 31-32.

The trial court properly gave the master's credibility determinations full consideration and did not abuse its discretion in relying on the estimate provided by Husband in sustaining the master's finding that Wife owned a separate $10,000.00 CD. **See Carney**, **supra**; **Smith**, **supra**.

Based on the foregoing, we affirm the decree of the trial court.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/8/2022