J-A16037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LASTENE R. YARRINGTON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GEORGE V. YARRINGTON | : | |
| | : | |
| Appellant | : | No. 491 WDA 2023 |

Appeal from the Decree Entered April 3, 2023
In the Court of Common Pleas of Butler County Domestic Relations at
No(s):  15-90263-D

BEFORE:  KUNSELMAN, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED: OCTOBER 9, 2024**

George V. Yarrington ("Husband") appeals from the order overruling exceptions to the Hearing Officer's report and recommendation and directing entry of a divorce decree. He maintains the trial court erred in adopting the Hearing Officer's findings regarding equitable distribution. We affirm.

Lastene Yarrington ("Wife") filed a complaint in divorce in April 2015. In October 2021, the Hearing Officer filed a report and recommendation regarding equitable distribution. The parties filed a consent motion for clarification and remand. The trial court remanded to the Hearing Officer for clarification. The Hearing Officer was to identify and list all marital and nonmarital assets, set forth the value of the marital assets and the marital value of non-marital assets, and identify all marital assets and marital value of nonmarital assets awarded to each party, with an explanation of the award.

In February 2022, the Hearing Officer issued a supplemental report and recommendation.

The Hearing Officer's findings included the following. The parties married in November 2000 and separated in March 2015. Findings of Fact, dated Oct. 19, 2021, at ¶ 9 ("Findings of Fact I"). Wife was limited to an earning capacity of $33,280, plus benefits, and Husband could earn a minimum of $83,200, plus benefits. *Id.* at ¶¶ 31-32. Both parties were unemployed at the time of the hearing. *Id.* at ¶¶ 30. The parties owned the marital residence, three lots adjacent to the marital residence, three land parcels in Brady Township, and a lot in Connoquenessing. *See* Findings of Fact Limited to Remand Matters, filed Feb. 14, 2022, at ¶¶ 35-36, 40, 41 ("Findings of Fact II").

The Hearing Officer pointed out that the parties chose to obtain a combined appraisal for the marital residence parcel and the three adjacent lots, with a combined appraised value of $190,000. *Id.* at ¶¶ 4-6. The parties did not obtain separate appraisals for each of the four parcels, or a value for the marital residence parcel alone and a combined appraisal of the three adjacent lots. Nor did they obtain a separate value for the building on the adjacent lots. *Id.*; *see also* N.T., Jan. 29, 2021, at 27-28 (counsel stipulating that the value of the house and the three adjacent lots was $190,000 and that the three lots were not separately appraised).

The Hearing Officer stated that she had "fully reviewed the appraisal," which was "entered into evidence without objection," found that "the marital residence parcel has an equitable distribution value without consideration of

- 2 -

costs of sale of $150,000 subject the HELOC loans as of separation." Findings of Fact I at ¶ 37.

Wife purchased the three lots adjacent to the property from her parents during the marriage for a fully mortgaged price of $25,000. *Id.* at ¶ 36. The Hearing Officer further found that "the gross value of the three separate lots, with the building thereon, adjacent to the marital residence parcel . . . is $40,000.00, subject to an outstanding mortgage at face in 2012 at $25,000.00 on which no payments have been made." *Id.* at ¶ 38. The Hearing Officer found that "[g]iven the long time outstanding mortgage with no payments made thereon, . . . the three separate lots adjacent to the marital residence parcel, in [Wife's] separate name, with the metal frame building built thereon have no marital component and no value to [Wife] as a separate asset due to acquisition debt with [nine] years of interest thereon." *Id.* at ¶ 39.

The Hearing Officer also found Husband entered the marriage with judgments entered against him, a tax lien, credit card debt, and a student loan in default. *Id.* at ¶¶ 51-57, 63-65. Husband also owed federal taxes from prior years. *Id.* The Hearing Officer found Wife credible when she testified that Husband had contributed little to none of his income to the payment of debt or household bills. *Id.* at ¶¶ 58-61. The Hearing Officer found that "the nature and extent of [Husband's] premarital IRS, student loan and judgment debt dissipated the marital estate." *Id.* at ¶ 85.

The Hearing Officer further found that "[Husband] has entered evidence regarding increase in the marital debts/mortgages post separation due to his argument that [Wife] has failed to pay the obligations." *Id.*, at Report and Recommendation at Value of Marital Residence. She found that although Husband was "technically correct, . . . his position [is] one of form over substance." *Id.* She reasoned that "[t]here [wa]s no dispute that the acquisition of the marital residence parcel was paid in full on purchase using a hardship withdrawal against [Wife's] marital 401(k) funds. The debts/mortgages, while secured by the residence, were used for myriad other marital financial missteps as well as payment toward [Husband's] myriad premarital financial missteps." *Id.* Based on these findings, the Hearing Officer found she would use the date of separation values of the debt to compute the marital component of the house because the debt "represents debts taken during the marriage."[1] *Id.*

The Hearing Officer noted that the parties disputed whether the Ford Bronco was marital property. She found that it was a premarital asset titled to Husband "just prior to marriage on which [Wife] took a $5,000.00 loan from her 401(k) [$7,000.00 total, $5,000.00 went to Bronco as $2,000.00 was for the Grave Digger]." Findings of Fact II at ¶ 27. The Hearing Officer found that

_____

[1] The Hearing Officer further concluded she would "use [Wife's] payment [of the debts] in lieu of imposing a fair market value rent on [Wife] for her residence in that property post separation whereon, absent the debt taken for other purposes, she would have resided in the house mortgage free." Findings of Fact I at Report and Recommendation at Value of Marital Residence.

"the bulk of the 401(k) loan used to acquire [Husband's] premarital bronco, to the extent paid, was paid during the marriage" and there was "considerable testimony regarding the Bronco and . . . that considerable marital funds were put into the Bronco during the marriage." *Id.* at ¶¶ 28-29. The Hearing Officer then concluded that the record "failed to establish a date of marriage value, a date of separation value and a date of distribution value for [the Bronco] clearly titled to [Husband's] name prior to marriage" and the "parties failed to put forth a record . . . on which the Hearing Officer [could] rely to determine a marital component to the Ford Bronco." *Id.* at ¶¶ 30-32. The Officer concluded "[i]n the event there is a marital component to the Ford Bronco, inasmuch as the parties failed to put forth a record before the Hearing Officer on which the Hearing Officer [could] rely to determine a marital component to the Ford Bronco, the same clearly favors [Husband] at the expense of [Wife]." *Id.* at ¶ 33.

The Hearing Officer further found that Wife paid the post-separation real estate taxes on the marital residence and that the parties had "considerable past due marital real estate taxes on the marital residence" and other lots and found that "during separation [Husband] paid only $1,447.66 toward the past due real estate taxes" and that "many of the taxes paid were paid by third party individuals who were helping [Wife]." Findings of Fact I at Report and Recommendation at Post Separation Credits. The Hearing Officer credited Wife for the third-party payments "as it is [Wife] who will need to pay those individuals back." *Id.* The Hearing Officer credited Wife's testimony that the

payments were not gifts and therefore credited Wife for $14,052.38 in payments of real estate taxes. *Id.* The Hearing Officer then noted that the difference between the amount Wife paid and the amount Husband paid was $12,604.72. *Id.*

The Hearing Officer found that "[w]ith liquidation of the Brady Township and Connoquenessing Lots and appropriate equitable distribution from there, [Wife] will have sufficient property to meet her needs." *Id.* at ¶ 90. The Hearing Officer concluded that the overall equitable distribution of 67/33 in favor of Wife, with no award of alimony, was proper in this case. *Id.* at Equitable Distribution.

In March 2022, Husband filed exceptions. The trial court overruled the exceptions and adopted the Hearing Officer's findings of fact and recommendations. Husband filed a timely notice of appeal.

Husband raises the following issues:

> 1. Whether the trial court erred in determining that the three (3) lots adjacent to the marital residence are not marital and have no marital component despite that they were acquired during the marriage, for consideration and they are not excluded under any provisions of 23 Pa.C.S. § 3501(a)?
>
> 2. Whether the trial court erred and abused its[] discretion in valuing the three (3) adjacent lots to the marital residence at $40,000.00?
>
> 3. Whether the trial court erred and abuse[d] its[] discretion in using the date of separation value of the home equity lines of credit on the Marital Residence instead of date of distribution and failed to set forth what it determined to be the balances of the home equity lines of credit at the date of separation?

4. Whether the trial court erred in determining that Wife was entitled to a credit of $14,052.38 for real estate taxes?

5. Whether the trial court erred and abused its[] discretion in finding that both parties failed to cooperate with discovery and therefore did not award Husband counsel fees?

6. Whether the trial court erred and abused its[] discretion in failing to determine that Wife dissipated marital assets by, *inter alia*, failing to pay the mortgage and real estate taxes timely, by unilaterally withdrawing her marital 401(k) and pension post separation, without Husband's knowledge or consent and by failing to execute a joint tax return for 2013?

7. Whether the trial court erred and abused its[] discretion in awarding a 67%/33% distribution in favor of Wife without explanation?

8. Whether the trial court erred in calculating the distribution and failed to set forth the values used to determine said calculation?

9. Whether the trial court erred and abused its[] discretion in considering how the parties spent their marital monies[,] handled their marital assets and debts during the marriage?

10. Whether the trial court erred in finding that Wife contributed $5,000.00 from her 401(k) loan to the purchase of the premarital Bronco when there was no proof of the same and when the Bronco was titled prior to Wife taking out the loan from her 401(k)?

11. Whether the trial court erred in crediting Wife for any payments during the marriage to Husband's premarital student loan when the balance of the loan increased from the date of marriage to the date of separation and when the parties jointly agreed to make payments on the same?

12. Whether the trial court erred and abused its[] discretion in not awarding Husband nor giving him the opportunity to buy Wife out of the three (3) marital parcels of land in Brady Township?

Husband's Br. at 8-9.

Husband's issues challenge the equitable distribution award. A trial court has broad discretion when fashioning an equitable distribution award. ***Carney v. Carney***, 167 A.3d 127, 131 (Pa.Super. 2017). We review an order for equitable distribution to determine whether "the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." ***Id.*** (citation omitted). We will "not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence." ***Id.*** (citation omitted). We "will not find an 'abuse of discretion' unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." ***Id.*** (citation omitted). When reviewing an equitable distribution award, "courts must consider the distribution scheme as a whole" and "measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." ***Id.*** (citation omitted).

Further, "it is within the province of the trial court to weigh the evidence and decide credibility," and we will not reverse unless the determinations are not supported by the record. ***Id.*** (citation omitted). Moreover, "a [hearing officer's] report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the [hearing officer] has the opportunity to observe and assess the behavior and demeanor of the parties." ***Id.*** (citation omitted).

**A. Whether the Three Adjacent Lots Are Marital Property**

Husband first argues that the court erred in determining that the three lots adjacent to the marital residence were not marital property and had no marital component. He argues the parties purchased the properties from Wife's parents for $25,000 during the marriage. He maintains the court improperly determined the parcels had no marital value and were a separate asset of Wife. He argues whether a property is marital is based on when it is acquired, and therefore the parcels are marital. He points out that there was no testimony the transfer was supposed to be a gift.

The trial court explained that neither it nor the Hearing Officer found the parcels were not marital property. Trial Ct. Op., filed June 28, 2023, at 2 ("1925(a) Op."). Rather, they found the properties had no "marital component" because any possible increase in value was offset by the interest accrued on the unpaid mortgage. *Id.*

The Hearing Officer used confusing language. Nonetheless, the trial court did not abuse its discretion in determining that the lots adjacent to the marital home were marital property but lacked marital value, due to the debt owed on the property. This issue lacks merit.

**B. Value of the Three Adjacent Lots**

Husband claims the court erred in valuing the three lots adjacent to the marital home at $40,000. He points out the parties hired an appraiser and that the appraisal entered into evidence did not delineate a value for each separate parcel. He claims that if this Court finds the Hearing Officer appropriately placed a value on the parcels, then the $40,000 value was an

abuse of discretion, arguing the value was too high based on comparable properties.[2]

The trial court pointed out that the Hearing Officer relied on the property appraisal stipulated to by the parties and found this was not error. 1925(a) Op. at 2.

Husband's claim lacks merit. The parties stipulated that the combined value of the marital residence parcel and the three adjacent lots was $190,000. **See** Husband's Br. at 21. The appraisal was prepared at the request of both parties,[3] and neither party presented any evidence of the value of the lots separate from the residence or the value of the building, and Husband did not object to the Hearing Officer's valuation of the marital residence as $150,000. Based on the evidence presented, and Husband's lack of objection to the value of the marital residence, the trial court did not abuse its discretion in accepting the Hearing Officer valuation of the three adjacent lots at $40,000.

_____

[2] Husband further claims that he cashed in a pre-marital Thrift Savings Plan to purchase the building on the property and therefore the Hearing Officer should have provided the equitable value to Husband. He did not raise this in his Exceptions and therefore waived the claim. **See Cook v. Cook**, 186 A.3d 1015, 1024-25 (Pa.Super. 2018) (matters not raised in exceptions are waived on appeal).

[3] **See** Husband's Br. at 20 ("the parties commission[ed] and equally shared the costs of the services of Appraiser, Michelle Czekalski Bradley of Czekalski Appraisal Services").

### C. Date of Separation v. Date of Distribution

Husband challenges the use of the date of separation for determining the value of the home equity lines of credit ("HELOCs"). Husband points out that the parties separated in 2015 and Wife resided in the marital home following the separation. At the time of separation, the marital home had two home equity loans. One loan had a balance of $68,262.67 at separation, and $17,755.70 at distribution. The other loan had balance of $19,830.09 at separation and had been paid off by Wife before the date of distribution. Wife used funds from one of her retirement accounts to pay off this loan.

Husband claims that the Hearing Officer valued the loans from the date of separation, which resulted in a more than a $70,000 difference in Wife's favor. He argues the court must choose the date of valuation that works economic justice and there is a preference for valuing the assets at the date of distribution. He points out that the Hearing Officer awarded the residence and the three adjacent parcels to Wife and then chose the date of separation, which reduced the equity in the home. He argues this did not effect economic justice.

When "determining the value of marital assets, a court must choose a date of valuation which best works economic justice between the parties." ***Smith v. Smith***, 904 A.2d 15, 18 (Pa.Super. 2006). This Court "will only reverse the decision of the [trial] court in regard to the setting of the date for the valuation of the marital assets on the basis of an abuse of discretion." ***Id.*** at 19 (citation omitted).

The Hearing Officer stated "[t]here [wa]s no dispute that the acquisition of the marital residence parcel was paid in full on purchase using a hardship withdrawal against [Wife's] marital 401(k) funds[.]" Findings of Fact I at Report and Recommendation at Value of Marital Residence. She noted that "[t]he debts/mortgages, while secured by the residence, were used for myriad other marital financial missteps as well as payment toward [Husband's] myriad premarital financial missteps." *Id.* Based on these findings, the Hearing Officer concluded that she would use the date of separation values of the debts to compute the marital component of the house because the debt "represents debts taken during the marriage." *Id.* The trial court did not abuse its discretion in determining that using the date of separation for the HELOCs worked economic justice for the parties.

### D. Credit to Wife for Real Estate Taxes

Husband maintains the court erred in finding Wife was entitled to a credit of $14,052.38 for payment of real estate taxes. He states that at the time of separation, they had unpaid property taxes from 2013 and 2014 and claims they paid the taxes post-separation. He claims that after separation, the parties both made payments toward taxes on the marital property, which Wife resided in. Husband argues that the payment for the overdue taxes was $9,512.03. He claims nothing in the record supports the additional credit awarded to Wife. He claims that the trial court stated the credit was to pay third parties who paid the taxes, but that there was no allegation that any third party paid the pre-separation taxes.

The trial court noted that the Hearing Officer relied on credibility determinations when making this credit, which it would not disturb. It pointed out that the Hearing Officer explained the credit was not granted to benefit Wife, but to reimburse third parties who paid the real estate taxes post separation. 1925(a) Op. at 3. This was not an abuse of discretion. We further note that a review of the exhibits, which included unpaid taxes from multiple years prior to the 2015 separation, not just 2013 and 2014, supports the numbers provided by the Hearing Officer.

**E. Cooperation with Discovery – Counsel Fees**

Husband argues that he made numerous motions due to Wife's failure to comply with discovery requests, whereas Wife filed only one motion to compel. He argues the filing of one motion to compel is not evidence of uncooperativeness. He argues Wife's uncooperativeness was repeatedly addressed by the court and noted he had been awarded counsel fees in the past. He argues the denial of counsel fees this time was an abuse of discretion.

The trial court found Husband waived the challenge to the denial of the counsel fees because his exceptions challenged only the finding that both parties were uncooperative. 1925(a) Op. at 3. We agree. Husband's objections included that:

> The [Hearing Officer's] finding that both parties failed to cooperate with discovery is not supported by the docket or the records when it is clear that Wife was dilatory and uncooperative in her discovery responses and the same had to be repeatedly addressed with the Court, accordingly the same is an abuse of discretion.

Exceptions to Master's Report and Recommendation on Remand, file Mar. 4, 2022, at ¶ j. They did not mention the denial of counsel fees. Because his exceptions failed to challenge the denial of counsel fees, Husband waived this issue. *See Cook*, 186 A.3d at 1024-25 (matters not raised in exceptions are waived on appeal).

### F. Whether Wife Dissipated Marital Assets

Husband points out that the Hearing Officer found he dissipated marital assets because the parties made payments during marriage toward his premarital IRS, student loan, and judgment debt. He maintains it was then inequitable for the court to not find Wife dissipated marital assets when she failed to make post-separation mortgage payments and payments on taxes and insurance. He notes the late payments on those bills caused penalties and interest fees. Further, Husband claims that if Wife failed to pay the insurance and taxes, they would automatically come from the HELOC. He maintains the total dissipation was $18,467.85. He also claims he presented evidence Wife failed to sign the 2013 tax return, which he tried to submit in 2018, and that she withdrew her entire 401(k) and pension in 2016 and 2017. He argues it was error to find he dissipated assets and not find that Wife did so too.

The trial court "refused to overturn the Hearing Officer's findings that were supported and analyzed, in exhaustive detail, considering the equitable distribution factors." 1925(a) Op. at 4. The Hearing Officer noted that Husband had presented evidence of an increase in the marital debts/mortgages post separation and claimed that Wife had failed to pay the obligations. The Hearing

- 14 -

Officer concluded that, although Husband was "technically correct, . . . his position [was] one of form over substance." Findings of Fact I at Report and Recommendation at Value of Marital Residence. The Hearing Officer found "the acquisition of the marital residence parcel was paid in full on purchase using a hardship withdrawal against [Wife's] marital 401(k) funds" and that the debts and mortgages, although "secured by the residence, were used for myriad marital financial missteps as well has payment toward [Husband's] myriad premarital financial missteps." *Id.*

The court did not abuse its discretion. The record supports the Hearing Officer's finding regarding the acquisition and payment of the debts, such that it was not an abuse of discretion not to find Wife dissipated marital assets. Husband's claim lacks merit.

### G. 67%/33% Distribution in Favor of Wife

Husband argues that, considering the arguments he made in his brief, the Hearing Officer's distribution of 67%/33% in favor of Wife was not equitable and did not effectuate economic justice. He further argues the Hearing Officer failed to set forth a basis for the division of assets. He argues that various factors undermine the distribution ratio: he and Wife are of similar age, Wife was in better health, both had a work history and worked full time through marriage, neither contributed to the other's education, both contributed to assets acquired during marriage, Wife had more separate property, and Wife was serving as custodian of the parties' children. He

- 15 -

maintains that even if the court was correct in finding he dissipated assets, that one factor would not support the distribution.

"When determining the propriety of an equitable distribution award, this Court must consider the distribution scheme as a whole." ***Conner v. Conner***, 217 A.3d 301, 309 (Pa.Super. 2019) (quoting ***Hess v. Hess***, 212 A.3d 520, 523 (Pa.Super. 2019)). "We do not evaluate the propriety of the distribution order upon our agreement with the court's actions nor do we find a basis for reversal in the court's application of a single factor." ***Id.*** (quoting ***Harvey v. Harvey***, 167 A.3d 6, 17 (Pa.Super. 2017)). "Rather, we look at the distribution as a whole in light of the court's overall application of the 23 Pa.C.S.A. § 3502(a) factors for consideration in awarding equitable distribution" to determine whether the court abused its discretion. ***Id.*** (citation omitted). Section 3502(a) provides:

> **(a) General rule.--**Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets. Factors which are relevant to the equitable division of marital property include the following:
>
> (1) The length of the marriage.
>
> (2) Any prior marriage of either party.
>
> (3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S.A. § 3502(a).

Here, the Hearing Officer addressed the factors, making findings including, but not limited to, that:

- the parties were married for 14 years and four months, and the marriage was the second marriage for each party;

- they had two children, one of whom was a minor;

- Wife had primary custody of the minor child;

- the educational background of the parties and their earning capacities (Wife had an earning capacity of $33,280 and Husband had an earning capacity of $83,200);

- their retirement benefits;

- the value of the property set apart to each party;

- Husband had dissipated assets;

- Husband contributed little to none of his income to the payment of debt or household bills; and

- the parties had a middle class life style during marriage.[4]

Findings of Fact II at ¶¶ 6-92. The Hearing Officer concluded that, considering the facts and Wife's use of some premarital retirement during marriage, the appropriate distribution scheme was 67/33 in favor of Wife, with no award of alimony.

The trial court found the record supported the hearing officer's report and its analysis of the factors. We agree and conclude it was not an abuse of discretion to award a 67/33 distribution scheme, in favor of Wife, in this case.

### H. Values Used to Determine Calculation

Husband argues the Hearing Officer failed to provide a listing of the marital property and a listing of non-marital property, as required. He further claims the Hearing Officer failed to provide calculations or descriptions of how

---

[4] The Hearing Officer concluded that Wife was terminated from her prior employment in 2016 through no fault of her own, and that she would not be able to earn the same amount, $64,266, with another employer. Findings of Fact at ¶¶ 20, 23.

she calculated the equity in the marital residence. He claims the paragraph where the officer lists valuations was "impossible to follow" and included vague findings.

The trial court found it adopted the hearing officer's findings of fact and recommendations, which set forth the percentage of distribution for each marital asset and the reasons for such distribution. 1925(a) Op. at 4. It noted that Section 3506 does not require that the calculations made be set forth. *Id.* This was not error. The Hearing Officer's Findings of Fact and Recommendation discussed the assets and their assigned value. Where a value was not assigned, it was because the parties failed to provide sufficient information to set a value. Husband's claim lacks merit.

### I. How Parties Spent Marital Money and Handled Marital Assets and Debts

Husband argues that many things testified to at the hearing had no relevance to the equitable distribution factors. He claims the Hearing Officer allowed evidence regarding Wife caring for Husband when he was injured, testimony on every loan taken out during marriage and marital asset used to acquire it, even though the purchases and payments were made with marital funds. He notes he objected to the line of questioning, but was overruled. He further claims the Hearing Officer allowed Wife to testify she paid off debts with equity loans without specifying what was paid off. He claims this all was irrelevant.

The trial court found Section 3502(a) requires courts to consider the challenged facts when conducting the equitable distribution analysis. 1925(a) Op. at 4-5. We agree and conclude this claim lacks merit.

### J. Contribution of $5,000 from Wife's 401(k) to purchase Premarital Bronco

Husband claims the Hearing Officer found Husband acquired the Bronco prior to marriage but that Wife took a $7,000 loan from her 401(k) and used $5,000 of it to purchase the Bronco. He contends Wife testified the money went to the restoration of, not purchase of, the Bronco.

The Hearing Officer found the Bronco was titled to Husband prior to marriage and therefore a premarital asset. Findings of Fact Limited to Remand at 13. She further noted that there was no dispute that a loan from Wife's 401(k) taken prior to marriage funded $5,000 toward the purchase of the Bronco. She stated that to the extent payments on the loans were made prior to marriage, Wife paid them with premarital assets and to the extent the payments were paid after marriage they were paid by acquisition of replacement marital debt or payment from marital assets. *Id.* The Hearing Officer then concluded that there was not a sufficient record to determine a marital value of the Bronco:

> What the parties fail to acknowledge in asking for the issue to be remanded to the Hearing Officer is their obligation to create the record for the Hearing Officer. To establish a marital component to a premarital asset, the record must include a date of marriage value, a date of separation value, and a date of distribution value.

*Id.* She stated that "[i]t was not, nor is it now, lost on the Hearing Officer that [Husband], in retaining his separate premarital Bronco, on which marital money was spent during the marriage, including marital money to restore/fix up/whatever description one desires to make of the alterations, due to the lack of proper record made to the Hearing Officer, benefits from said retention of the asset – even if nothing more than the marital carrying costs throughout the 14+ years of marriage." *Id.*

The trial court concluded that it was clear that this issue had been heavily litigated and that "despite extensive argument, [the parties] failed to provide the necessary evidence for the [Hearing Officer] to make a determination of the marital value of the Bronco such that she could effectuate a distribution thereof." Trial Court Opinion, filed Feb. 21, 2023, at 9.

This was not an abuse of discretion. The Hearing Officer found that the Bronco was Husband's premarital asset and that the parties failed to provide sufficient information for her to make any findings regarding a marital component to the Bronco. Whether the $5,000 of Wife's premarital assets was used to purchase or restore the Bronco, does not change this finding. Husband's claim lacks merit.

### K. Payments for Husband's Premarital Student Loan

Husband notes Wife testified that payments were made toward Husband's premarital student loan during marriage. He notes that at certain points during marriage he deferred or placed in forbearance the loans and the

balance increased from marriage date to separation date. He therefore claims the payment of the loans was not relevant.

The trial court found the Hearing Officer properly considered the parties' contribution towards the other's education. 1925(a) Op. at 5. This was not error.

## L. Marital Parcels of Land in Brady Township

Husband requested that the court award to him the three parcels of land the parties owned in Brady Township. He claims the Hearing Officer erred in ordering the sale without giving him the opportunity to buy Wife out.

The Hearing Officer found that Wife would receive $82,684 of the proceeds of the sale of the Brady Township lots "plus 67% of any net proceeds" from the sale if the lots net more than $175,500 after costs of sales and that Husband would receive $92,816 of the proceeds from the sale of the Brady Township lots, "plus 33% of any net proceeds" from the sale if the sale nets more than $175,500.

The trial court found that nothing barred Husband from purchasing the parcels of land. 1925(a) Op. at 5. This was not an abuse of discretion. Although the lots must be sold, with both Wife and Husband receiving portions of the proceeds, nothing bars Husband from purchasing the lots and providing Wife her portion. This claim lacks merit.

We affirm.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>10/9/2024</u>